*In re* DWAYNE McCLINTON, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* DWAYNE McCLINTON, Respondent-Appellant.)

First District (4th Division)  No. 77-1816

Opinion filed August 24, 1978.

James J. Doherty, Public Defender, of Chicago (Michael McInerney and Frances Sowa, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Mary Ann Callum, and Stephen D. Ferrone, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

On March 11, 1977, a petition for the adjudication of wardship of the minor-respondent Dwayne McClinton was filed, alleging that he committed the offense of robbery (Ill. Rev. Stat. 1975, ch. 38, par. 18—1) on March 10, 1977. Respondent entered an admission to that charge on April 13, 1977, after an adjudicatory hearing, and on May 24, 1977, the court entered a dispositional order committing him to the Department of Corrections. The issues presented for review are whether the facts adduced at the dispositional hearing were sufficient to support commitment and whether the court applied an impermissible adult standard in rejecting probation as a possible disposition.

At the adjudicatory hearing, the court admonished respondent with respect to his rights and the consequences of his admission and explained each one in detail. The stipulation of facts indicated that respondent and another youth took $10 in cash and a wristwatch from the victim on March

10, 1977. Upon being apprehended shortly thereafter, they admitted the robbery, stating they needed the money.

The court made a finding of delinquency and determined that it was in the best interest of respondent and the community that he be adjudged a ward of the court.

At a dispositional hearing, probation officer Goldberg summarized a social investigation report. He stated respondent is the third eldest of four boys living in a fatherless home. His oldest brother was disabled as the result of a gunshot wound and another brother is incarcerated. Since enrolling in Senn High School on February 3, 1977, respondent had accumulated 30 absences and 12 tardies. He had station adjustments for being the victim of a battery on December 15, 1975, for theft in January 1975 and in February 1977, and for being in possession of marijuana in March of 1977. The court file indicated there were referrals for burglary on December 5, 1975, and for being ungovernable on April 10, 1976. Two charges of theft were stricken with leave to reinstate on April 13, 1977. The report further indicated respondent had problems with authority figures and believed he was entitled to another's property if he could take it. Goldberg concluded it would take a great deal of effort on respondent's part to change his behavior, but he did point out that respondent had never had the services of the court made available to him.

Respondent testified that Carl Levin had given him a volunteer job at the Boys Club and would try to put him in a paying position.

Carl Levin testified he had known respondent for about one month and had worked with him once each week for about two hours at a time. He had been successful in finding respondent a summer job with the CETA Program at $2.50 per hour which would start within the next month; he believed respondent could hold the job. Levin further testified it was his feeling respondent had been involved in some incidents of illegal activity in the community but had tried to keep such occurrences to a minimum.

The court found that probation would be inappropriate because it would "deprecate the seriousness of the minor-respondent's misconduct," respondent was beyond the control of his mother and it was in his best interest and of the community at large that he be committed to the Department of Corrections.

Respondent contends that the court erred in committing him to the Department of Corrections, alleging first that the facts shown at the dispositional hearing and in the social investigation report do not support commitment. He specifically points out the probation officer did not recommend commitment and he had encountered no further difficulties with the police between the finding of delinquency on April 13, 1977, and the dispositional hearing on May 24, 1977. He argues that the four station

adjustments and the four referrals to the court are unproven allegations which must not be accorded great weight. He further contends probation was appropriate because he has never had the services of the court made available to him before, he has begun to see a social worker, Carl Levin, on a weekly basis, and he would have a summer job. Moreover, respondent contends that probation may be made conditional on certain restrictions imposed by the court.

Section 5—10 of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 705—10) provides for commitment if the court finds that respondent's parents or legal guardian are unfit or unable to train or discipline the minor or are unwilling to do so, and the best interests of the minor and the public will not be served by placement under section 5—7. Section 5—7 (Ill. Rev. Stat. 1975, ch. 37, par. 705—7) provides in part for commitment to the custody of a suitable relative or other person placed under the guardianship of a probation officer, commitment to an agency for care or placement, commitment to a licensed training school or industrial school, or commitment to an appropriate institution having among its purposes the care of delinquent children.

It is apparent from respondent's numerous absences from school and his frequent contact with the police, that his mother was incapable of disciplining him. The probation officer indicated that respondent had difficulty with authority figures and characterized respondent's attitude as believing that anything he could take belonged to him. Goldberg made no specific recommendation but concluded that it would take a great deal of effort on respondent's part to change his attitude and behavior.

■■■ Although respondent contends that station adjustments must be given little weight because they are unproven allegations, we believe they are probative and relevant because they enable the trial court to determine the proper disposition. (*In re Stead* (1978), 59 Ill. App. 3d 1012, 376 N.E.2d 689; *In re Wilson* (1976), 40 Ill. App. 3d 619, 352 N.E.2d 251; *In re Sneed* (1976), 38 Ill. App. 3d 1041, 1042, 350 N.E.2d 122.) We conclude that respondent's attitude and his past contacts with the law support the trial court's finding that he be committed to the Department of Corrections rather than being placed under section 5—7.

■■ Respondent next contends the court applied an impermissible adult standard in determining to commit rather than place him on probation. Among other reasons, the court indicated that probation was not appropriate because it would "deprecate the seriousness of respondent's misconduct," a standard which appears in the adult probation statute (Ill. Rev. Stat. 1975, ch. 38, par. 1005—6—1(a)(3)), but not in the juvenile statute. Respondent cites *In re Sneed* (1977), 48 Ill. App. 3d 364, 363 N.E.2d 37, and *In re Tucker* (1977), 54 Ill. App. 3d 600, 370 N.E.2d 45, for

the proposition that an adult statute may not be used in juvenile proceedings and asserts that an adult sentencing hearing and a juvenile dispositional hearing are not to be equated.

Although the court used words appropriate under the adult statute, it did so only in conjunction with findings appropriate to section 5—10 of the Juvenile Court Act. Thus, in this case where the findings pertinent to the Juvenile Court Act are supported by the evidence, the inappropriate language will not be deemed to constitute reversible error.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

JOHNSON, P. J., and LINN, J., concur.