THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PETER BAXTROM, Defendant-Appellant.

Fifth District   No. 78-275

Opinion filed March 14, 1980.

654

John H. Reid and Richard J. Bennett, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Clyde L. Kuehn, State's Attorney, of Belleville (Martin N. Ashley and Stephen E. Maassen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE HARRISON delivered the opinion of the court:

Defendant Peter Baxtrom appeals from a judgment of the circuit court of St. Clair County entered on a jury verdict finding him guilty of murder. He was sentenced to a period of 14 to 20 years' imprisonment. On appeal he contends that (1) the juvenile court abused its discretion in certifying him to be tried as an adult; and (2) the trial court erred in not suppressing his written statement because it was involuntarily given. We affirm the judgment of the circuit court.

On October 3, 1977, defendant was charged in a delinquency petition with the murder of Anthony M. Lee on September 20, 1977, during the commission of a forcible felony, armed robbery. At defendant's adjudicatory hearing on October 19, 1977, the State filed a motion for leave to prosecute under the criminal law. During the hearing on that motion, the State called Officer Willie Rich, a juvenile officer of the East St. Louis police department. Based on his review of the police report, including a statement by the defendant, and his conversations with one of the investigating detectives, Officer Rich testified as to the background and circumstances of the homicide.

Officer Rich testified that the defendant and his stepbrother, Jerome Hawkins, were walking down State Street in East St. Louis after midnight on September 30, 1977. Defendant had a .38 caliber revolver in his pocket and allegedly fired several shots at a passing car driven by a man who

defendant said had previously robbed him and his stepbrother. At the intersection of 20th and State Streets, they came to an outdoor car wash and observed the victim, Anthony Lee. The two decided to rob him, so Jerome went to the back of the car where Mr. Lee was standing and told him to hand over his wallet. Jerome was in possession of a sawed-off .410 gauge shotgun. Defendant was at the front of the car with the revolver in his hand. During the robbery, the shotgun discharged at point-blank range, the victim fell, and Jerome and defendant ran from the scene.

Officer Rich testified that on the day of the shooting, defendant was still a juvenile, being within one month of his 17th birthday. The officer also testified as to the defendant's past contacts with the police and the disposition of those cases. On June 17, 1974, defendant was arrested for burglary and placed on supervision for six months by the court. On January 8, 1975, he was arrested for fighting but released to his mother. Defendant was also arrested for taking money from another juvenile on June 10, 1975, but his mother agreed to reimburse the victim. On October 8, 1975, he was arrested for aggravated battery, but the case was dismissed by the court. Eight days later he was arrested as a burglary suspect but released to his parents pending further investigation. Defendant was also accused of rape on April 29, 1977, but the mother of the victim declined to prosecute. Officer Rich also testified that defendant had dropped out of school on November 11, 1976, and had been absent more days than he had been present during the previous school year.

The motion to transfer was then argued, and the court entered an order that it had "no objection to the trial of this minor as an adult * * *." The court entered a second order dated October 24, 1977, and filed October 26, 1977, which read as follows:

"This cause coming on for certification to prosecute minor as an adult under Section 702—7. Sworn testimony taken, witness presented, this Court does find that the factual evidence presented does indicate that sufficient evidence would be available upon which a Grand Jury would be expected to return an indictment; that it appears to this Court that the offense as charged was committed in an aggressive and premeditated manner; that it is of significant importance to this Court that the minor is within thirty (30) days of attaining age seventeen (17); that while the previous criminal history of this minor does not indicate commission of crimes in violence, said history is sufficient to be of importance in the issue of whether this minor should be tried as an adult; that there are no facilities particularly available to the Juvenile Court for treatment and rehabilitation of this minor and that this Court feels that for the security of the public and for the betterment of this minor, that it may be necessary to continue custody of this

minor beyond the period of his minority. For the above reasons and causes, this Court does allow the motion presented under Chapter 37, 702—7, and enters no objection to the prosecution of Peter Darrell Baxtron as an adult. Upon the issuance of criminal adult pleadings, petition filed herein shall be dismissed."

Defendant and Jerome Hawkins were indicted for murder on November 17, 1977, and a motion to sever the cases was granted. On January 24, 1978, defendant filed a motion to suppress his confession. The hearing on the motion was held on February 10, 1978, during which Detectives Richard Stone and Isadore Chambers of the East St. Louis police department testified that defendant became a suspect in the murder through a statement given by Hawkins implicating him. Detective Stone stated that he and Detective Chambers went to defendant's home on Sunday, October 2, 1977, and asked a young lady who answered the door to speak with defendant's father. Mr. Baxtrom was not home. However, defendant came out on the porch and was arrested, read his *Miranda* rights and told he could be certified and tried as an adult. Detective Stone told the young lady, defendant's sister, that defendant was being taken to the police station and that the father should call there when he returned. This was approximately 3:15 p.m.

Upon arriving at the police station, the officers attempted to contact a juvenile officer, but learned there was none on duty on Sunday afternoon. Detective Chambers again advised defendant of his *Miranda* rights and read to him the waiver of rights form used by the East St. Louis police department, explaining each right individually. Defendant was then asked to read it and initial each right being waived and sign the form at the bottom, all of which he did. The detectives testified that he appeared to understand what he was doing.

At that time interrogation began with Detective Stone informing the defendant that Jerome Hawkins had given a statement. Defendant then gave a statement which he signed at 4:40 p.m. Defendant's parents never called or appeared at the station, and Detective Stone stated that defendant never asked to speak to his parents or an attorney and declined an offer to make a telephone call. The defendant did not present any evidence, but counsel argued that the police had made inadequate efforts to contact a juvenile officer and defendant's parents. The motion to suppress was denied, and defendant was tried, convicted and sentenced as aforesaid.

Appellant first contends that the juvenile court abused its discretion in certifying him as an adult because the requisite statutory findings were not supported by the evidence. The statute permitting juveniles to be prosecuted as adults, section 2—7 of the Juvenile Court Act, provides:

"(3) If a petition alleges commission by a minor 13 years of age

or over of an act which constitutes a crime under the laws of this State, and, on motion of the State's Attorney, a Juvenile Judge, designated by the Chief Judge of the Circuit to hear and determine such motions, after investigation and hearing but before commencement of the adjudicatory hearing, finds that it is not in the best interests of the minor or of the public to proceed under this Act, the court may enter an order permitting prosecution under the criminal laws.

(a) In making its determination on a motion to permit prosecution under the criminal laws, the court shall consider among other matters: (1) whether there is sufficient evidence upon which a grand jury may be expected to return an indictment; (2) whether there is evidence that the alleged offense was committed in an aggressive and premeditated manner; (3) the age of the minor; (4) the previous history of the minor; (5) whether there are facilities particularly available to the Juvenile Court for the treatment and rehabilitation of the minor; and (6) whether the best interest of the minor and the security of the public may require that the minor continue in custody or under supervision for a period extending beyond his minority." ( Ill. Rev. Stat. 1977, ch. 37, par. 702—7(3).) Appellant agrees that there was sufficient evidence to support an indictment, and admits that his age of 16 years, 11 months, probably does not militate against his certification, but contends that there was insufficient evidence to support the other factors. His argument is that "[a] review of the instant record demonstrates that despite the trial court's findings, which merely restated the statutory criteria for transfer, its decision to allow the defendant to be tried as an adult was indeed an abuse of discretion." We disagree.

This statute and its application was most recently discussed by the Illinois Supreme Court in *People v. Taylor* (1979), 76 Ill. 2d 289, 391 N.E.2d 366. There, as appellant acknowledges, the court held that "under our statute the State need only present evidence sufficient to persuade the trial court, in the sound exercise of its discretion, that in light of the statutorily prescribed criteria transfer is warranted." (76 Ill. 2d 289, 303-04.) Thus the standard of review in an appellate court is clear.

"According to our interpretation of the Illinois transfer statute, the role of the appellate court is to determine whether, in evaluating the evidence in light of the statutory criteria, the juvenile judge has abused his discretion. (*People v. Underwood* (1977), 50 Ill. App. 3d 908.) Therefore, while no formal statement of reasons or conventional findings of fact are necessary, the juvenile judge must take care to preserve a record sufficiently explicit so that his

exercise of discretion may be reviewed meaningfully. * * * Neither the statute nor *Kent* [*Kent v. United States* (1966), 383 U.S. 541, 16 L. Ed. 2d 84, 86 S. Ct. 1045], however, precludes more informal means of preserving a record sufficiently adequate to ensure meaningful review. We note that other courts considering this issue have reached the same conclusion. The Supreme Court of Montana has said:

> 'We do not construe the provisions of the Montana Juvenile Court Act as requiring conventional findings of fact or an express, formal statement of the reasons for ordering the waiver and transfer. If the reasons motivating the exercise of the juvenile court's discretion in ordering the waiver and transfer sufficiently appear in the record of the hearing to permit meaningful appellate review of the discretion exercised, constitutional requirements are satisfied.' *Lujan v. District Court* (1973), 161 Mont. 287, 295, 505 P.2d 896, 900-01." (76 Ill. 2d 289, 300-01.)

Appellant's complaint seems to be that since the juvenile court did not make formal findings of fact, and the evidence does not support an affirmative finding of *all* six factors listed by section 2—7, prosecution under the adult criminal law is precluded. However, *Taylor* refutes such a position.

■■ The court in *Taylor* considered the statute's failure to establish a formula for the application of the six criteria.

> "We believe it is not constitutionally required and would not be feasible for the statute to prescribe a mathematical formula to govern the judge's discretion. As the Maryland court of special appeals said of a similar constitutional challenge:
>
> > 'Of course, not all of the relevant factors under Section 70—16 need be resolved against the juvenile to justify the waiver of jurisdiction. Nor is there any utility in requiring the court to make an arithmetic-type calculation as to the weight given by it to each factor.' *Hazell v. State* (1971), 12 Md. App. 144, 155, 277 A.2d 639, 645.

The United States Supreme Court has recognized the constitutionality of the judicial discretion and lack of formal procedure inherent in the juvenile transfer proceeding. In *Kent* the court observed of the statute that it upheld:

> 'The statute gives the Juvenile Court a substantial degree of discretion as to the factual considerations to be evaluated, the weight to be given them and the conclusion to be reached.' (383 U.S. 541, 553, 16 L. Ed. 2d 84, 93, 86 S. Ct. 1045, 1053.)" (76 Ill. 2d 289, 305-06.)

Therefore, we need only review the evidence presented and the orders of the juvenile court to determine whether the court abused its discretion in ordering transfer.

■■ Considering the evidence as applied to the statute, appellant concedes the age and indictment factors. The record indicates that the crime was committed in an aggressive and premeditated manner. Appellant was in possession of a revolver at the time of the armed robbery and acted as a lookout during the crime, and as is admitted in his brief, "[i]t is clear that defendant and his half-brother planned to rob the deceased." The crime of murder with which he is charged holds appellant accountable for any killing which occurs during the course of an armed robbery. Moreover, appellant's history reflects numerous encounters with the law and a rejection of school discipline. Also, the right and need of the public to be secure from such armed violence such as that involved here cries out for appropriate remedial action, considering also the best interests of the minor. The juvenile court, weighing the interests of both society and appellant, determined he should be subject to the State's criminal laws rather than be charged with delinquency and subject to the control of the juvenile authorities only until his 21st birthday. Given the combination of all these factors and evidence in the record corroborative thereof, we find no abuse of the juvenile court's discretion. See, *e.g.*, *People v. Underwood* (1978), 72 Ill. 2d 124, 127-28, 378 N.E.2d 513.

■ The court found in its order that "there are no facilities particularly available to the Juvenile Court for treatment and rehabilitation of this minor * * *." The prosecutor argued that the court was aware of the inadequacies of juvenile facilities to handle appellant. Appellant, on the other hand, argued that since he had never been placed on probation or committed to the juvenile division of the Department of Corrections, the juvenile facilities had not been exhausted and that this statutory factor was, therefore, not proved by the State. However, "[w]e do not read the statute to require the judge to consider evidence beyond his own knowledge of available facilities and his conclusion as to the effectiveness of treatment of the particular minor in these facilities." (*People v. Banks* (1975), 29 Ill. App. 3d 923, 926, 331 N.E.2d 561.) Notwithstanding the absence of testimony at the transfer hearing on this matter, a requirement which appellant seems to urge upon this court, such a requirement would be aimed at the sort of mathematical nicety requiring detailed testimony to be taken on each statutory factor which was rejected by our supreme court in *People v. Taylor*. Given the law that no mathematical formula is operative here, we find there was more than enough evidence to conclude that appellant should be certified to be tried as an adult.

Appellant also argues that the trial court erred in not suppressing his

confession because the police failed to comply with section 3—2(1) ( Ill. Rev. Stat. 1977, ch. 37, par. 703—2(1)), which reads in pertinent part:

"(1) A law enforcement officer who takes a minor into custody with or without a warrant under Section 3—1 shall immediately make a reasonable attempt to notify the parent or other person legally responsible for the minor's care or the person with whom the minor resides that the minor has been taken into custody and where he is being held; and the officer shall without unnecessary delay take the minor to the nearest juvenile police officer designated for such purposes in the county of venue or shall surrender the minor to a juvenile police officer in the city or village where the offense is alleged to have been committed."

While appellant admits that he did not request to see an attorney or his parents prior to interrogation, and declined a pre-interrogation invitation to make a telephone call, he urges us to find that his statement was involuntary because the police did not make sufficient attempts to notify his parents or take him before a juvenile officer. This we decline to do. ■■ The record reflects Detective Stone's query of appellant's sister whether their father was home, to which a negative reply was received. No request was made concerning the whereabouts of their mother and we do not believe the statute requires such interrogation. We believe that had the mother been at home, she would have come forward or been informed of the officers' presence. Detective Stone informed appellant's sister that he was being arrested and transferred to the East St. Louis police department and that their father should call the station. No such call was received. However, we do not believe the statute then places an affirmative duty on the police to scour the city in an effort to locate the parents, for the statute only requires them to make a *reasonable* attempt to notify the parents. They had done all they were required to do and should do within reason.

Likewise, the detectives made a reasonable effort to locate the department juvenile officer, only to find that one was not on duty on Sunday afternoon. In the absence of such a juvenile officer, the detectives were not precluded from interrogating appellant, since the police have a duty to investigate crimes even where juveniles are involved. (*People v. Zepeda* (1970), 47 Ill. 2d 23, 28-29, 265 N.E.2d 647.) He was repeatedly warned of his *Miranda* rights and told he could be certified and tried as an adult. Both officers testified he appeared to be in possession of his faculties and understood what was being said to him and what he was doing when he signed the waiver form. The voluntariness of a juvenile's confession is to be judged on the totality of the circumstances. (*In re Lamb* (1975), 61 Ill. 2d 383, 388, 336 N.E.2d 753, *cert. denied* (1976), 425 U.S. 938, 48 L. Ed. 2d 180, 96 S. Ct. 1672; *In re Stiff* (1975), 32 Ill. App. 3d

971, 977-78, 336 N.E.2d 619.) The question to be resolved is whether the statement was made freely, voluntarily and without compulsion or inducement of any sort or whether the appellant's will was overborne at the time he confessed. *People v. Prim* (1972), 53 Ill. 2d 62, 70, 289 N.E.2d 601, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731; *People v. Hester* (1968), 39 Ill. 2d 489, 497, 237 N.E.2d 466, *appeal dismissed* (1970), 397 U.S. 660, 25 L. Ed. 2d 642, 90 S. Ct. 1408.

The record clearly reflects the care with which these officers informed appellant of his rights and made sure he understood them prior to waiving them. They offered him the opportunity to make a phone call which he declined. And he never requested the presence of his parents or an attorney prior to or during questioning. Even if we were to hold that the police violated section 3—2 of the Juvenile Court Act, which we do not, the law is clear that such violation would not render the statement inadmissible. (*People v. Zepeda; People v. Steptore* (1972), 51 Ill. 2d 208, 214-15, 281 N.E.2d 642.) The trial court made its determination of voluntariness, which determination will not be disturbed on review unless it is contrary to the manifest weight of the evidence. (*People v. Vinson* (1978), 61 Ill. App. 3d 684, 687, 378 N.E.2d 348.) We conclude the evidence supports the trial court's determination.

Accordingly, we affirm the judgment of the circuit court of St. Clair County.

Judgment affirmed.

SPOMER and KASSERMAN, JJ., concur.