THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
PHILLIP ANTHONY LIGGETT, Defendant-Appellant.

Fourth District    No. 16176

Opinion filed December 1, 1980.

Daniel D. Yuhas and Diana N. Cherry, both of State Appellate Defender's Office, of Springfield, and Gary S. Rapaport, law student, for appellant.

Thomas J. Fahey, State's Attorney, of Danville (Gary J. Anderson and Larry Wechter, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

We are concerned here with section 2—7 of the Juvenile Court Act (Ill. Rev. Stat. 1979, ch. 37, par. 702—7) which, with limited exceptions not pertinent here, prohibits the criminal prosecution of minors under the age of 17 years except when the court determines after a proper hearing that it is not in the "best interests of the minor or the public" to proceed against the minor merely under the Juvenile Court Act. Ill. Rev. Stat. 1979, ch. 37, par. 702—7(3).

On April 30, 1979, a petition was filed in the circuit court of Vermilion County for leave to charge criminally defendant, Phillip Anthony Liggett, then aged 15, with the offenses of murder, rape, and deviate sexual assault allegedly committed against his three-year-old half sister. The petition was heard on May 11, 1979, and after the court deliberated the matter for three days, it entered an order on May 14, 1979, permitting the prosecution. An information was then filed. On July 30, 1979, defendant tendered and the court accepted a plea of guilty to count II of the information charging him with felony murder while committing the underlying forcible felony of deviate sexual assault. On October 25, 1979, the court imposed a sentence of 24 years' imprisonment.

On November 21, 1979, defendant filed a motion requesting: (1) leave to withdraw his plea of guilty; (2) a vacation of his conviction and sentence; and (3) a vacation of the order authorizing that he be charged as an adult. In the alternative he requested that his sentence be reduced to the minimum term for felony murder, 20 years (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(a)(1)). The motion was heard and denied on February 7, 1980, and notice of appeal was timely filed.

Defendant's motion to withdraw the plea did not allege irregularities in the acceptance of the plea. It maintained that prosecution of him as a criminal was improper and for that reason sought to set aside his conviction and the order permitting the prosecution. He reasserts that position on appeal, contending that the evidence presented at the hearing on the petition together with that presented at sentencing show that, as a matter of law, he should not have been treated as a criminal.

As the question of the propriety of the original ruling on the petition for leave to prosecute is so closely related to the propriety of the denial of leave to withdraw the plea of guilty, we consider these issues together. We need not consider: (1) whether any claim of errors in permitting the filing of the charges was waived by the guilty plea; or (2) whether evidence introduced at sentencing may be considered with reference to whether the ruling permitting prosecution should stand. We conclude that even considering all the evidence in the record, the trial court's decisions to permit prosecution and refusing to set aside the determination were not error.

Section 2—7(3)(a) of the Juvenile Court Act (Ill. Rev. Stat. 1979, ch. 37, par. 702—7(3)(a)) states in part:

> "In making its determination on a motion to permit prosecution under the criminal laws, the court shall consider among other matters: (1) whether there is sufficient evidence upon which a grand jury may be expected to return an indictment; (2) whether there is evidence that the alleged offense was committed in an aggressive and premeditated manner; (3) the age of the minor; (4) the previous history of the minor; (5) whether there are facilities particularly available to the Juvenile Court for the treatment and rehabilitation of the minor; and (6) whether the best interest of the minor and the security of the public may require that the minor continue in custody or under supervision for a period extending beyond his minority."

In the definitive opinion of *People v. Taylor* (1979), 76 Ill. 2d 289, 391 N.E.2d 366, the court stressed that where, as here, proper procedural requirements had been met, a trial court has substantial discretion in determining whether to permit prosecution. That opinion noted that the United States Supreme Court had stated in *Breed v. Jones* (1975), 421

U.S. 519, 44 L. Ed. 2d 346, 95 S. Ct. 1779, that the Federal Constitution did not require any particular quantum of evidence to support a decision to allow such prosecution. The refusal of a trial court to permit prosecution of a juvenile for murder was upheld in *In re Burns* (1978), 67 Ill. App. 3d 361, 385 N.E.2d 22, with that court also emphasizing the large discretion vested in the trial court. The opinion described the criterion of section 2—7(3)(a) as not being exclusive. In *People v. Underwood* (1977), 50 Ill. App. 3d 908, 365 N.E.2d 1370, *modified on other grounds* (1978), 72 Ill. 2d 124, 378 N.E.2d 513, we have likewise held the trial court to have wide discretion in ruling on a similar petition. Accord, *People v. Cater* (1979), 78 Ill. App. 3d 983, 398 N.E.2d 28.

We now turn to the extensive evidence which the trial court considered in determining to permit filing of criminal charges and in refusing to allow the guilty plea to be withdrawn and the order permitting filing of the charges to be vacated.

Several statements of individuals were admitted by stipulation at the hearing on the petition for leave to prosecute. The most important was one given by defendant to police. He stated that in the early morning hours of April 29, 1979, he went to the room of his three-year-old half-sister Robin at a time when no adults were present in the house and the other children were asleep. He described placing a sock soaked in cleaning fluid over her mouth and nose while she slept. He admitted his intent was to make her unconscious so that he might sexually attack her and that he knew the liquid would have that effect as he had previously tested it. He further described carrying her to his bedroom, having anal intercourse with her, then returning her to her room, laying her face down on her bed, and checking to see that she was still alive and breathing. He stated that he knew nothing of Robin's death until their mother found her body the next morning.

Statements by defendant's mother's boyfriend and defendant's grandmother were also presented. The boyfriend stated that: (1) he kept the cleaning substance for use in cleaning electrical parts; (2) he had warned defendant that its use would make a person drunk; (3) Robin had complained of defendant's bothering her; (4) once Robin had to be taken to a doctor because defendant had tried to force her to inhale some chemical substance; and (5) when defendant saw Robin's body, he picked her up by the foot "like a slab of bacon," said "she is dead" and dropped her. The grandmother's statement described the substance previously inflicted upon Robin as being chloroform obtained by defendant supposedly for use in a biology class. She indicated that Robin had said defendant threw the substance at her with some of it getting in her eye. The grandmother also said that one month before Robin's death, the child had said defendant "stuck his hairy in me."

Evidence indicated that the child died from having inhaled the cleaning substance.

A probation officer's social report described defendant as being the oldest of the six children of his mother, who had been married several times. He was stated to be in good health, but his home life was deemed unstable. He was in the ninth grade, doing average or better work with good attendance and no adverse disciplining record at school. He attended church and did not use tobacco, alcohol or drugs. He had minor police contacts prior to November and December 1978 when he was charged with burglary and shoplifting and thereafter met regularly with the probation officer.

A report by the court appointed clinical psychologist, Dr. Uzi Ben-Ami, characterized defendant as cooperative and stated that no mental deficiency or inability to comprehend situations were involved in his behavior. His intellectual abilities were measured as "bright normal." Dr. Ben-Ami noted that defendant's grades had begun to deteriorate in October 1978, which decline coincided with the burglary and shoplifting incidents. Dr. Ben-Ami diagnosed defendant as suffering from: (1) "a compulsive-obsessive character disorder of antisocial type"; and (2) "obsessive ideation about sexuality." The antisocial disorder was said to stem from defendant's neglect by his parents and lack of effective or consistent supervision and to cause him to care for himself by whatever antisocial or immoral means he could. His ideation about sexuality was said to have resulted from his lack of a positive male model. Dr. Ben-Ami pointed out that defendant had developed a sense of responsibility toward his younger siblings who shared his predicament.

The doctor considered defendant to have above normal ability to distinguish between right and wrong, comprehend social situations and plan but that his described disabilities made him dangerous to others when he had minimum outside controls. He described defendant as lacking respect for morality and controlled only by fear of getting caught. He theorized that defendant loved Robin but found her an achievable compromise for his sexual urges. He believed that defendant did not intend to kill Robin but was well aware of the dangers of killing her with the cleaning substance. He pointed to various indications that defendant had been planning the deviate sexual assault for some time. He stated that defendant needed (1) intensive psychotherapy and a "predetermined long period of stay" under institutional supervision. Nevertheless, he deemed defendant to be rehabilitatable.

The evidence at sentencing was more favorable to defendant's theory than was that at the hearing on the petition for leave to prosecute. The report of a psychiatrist pictured defendant as being emotionally immature for his age and having many problems of sexual adjustment.

The doctor (1) considered defendant to have had a depressive illness but for which he would not have committed the act, (2) considered his mental state to have been reckless rather than malicious, (3) thought that defendant had endeavored to protect Robin from harm during his actions, and (4) considered defendant's chances for rehabilitation to be good if sent to a "reform school" with psychiatric care. He opposed imprisonment beyond defendant's majority, noting that his sexual problems would likely increase if isolated from women until age 25 or more. Dr. Robert E. Talbot agreed with Dr. Pugh that incarceration beyond defendant's reaching 21 years of age would be counterproductive to his rehabilitation. He felt that treatment outside the Department of Corrections would be more effective than that inside because defendant would find fewer helpful role models inside the prison. Dr. Ben-Ami agreed that 10 years of imprisonment would not be required for defendant to "overcome his behavior patterns."

We now consider each of the factors in section 2—7(3)(a) in the light of all the evidence. Obviously, sufficient evidence existed for a grand jury to indict. Although the evidence did not indicate defendant intended to kill Robin, it was sufficient for the court to have considered the underlying felony of deviate sexual assault to have been committed in an aggressive and premeditated manner. Defendant's age was more than halfway between 13 years, the youngest age at which he could have been charged with a crime (Ill. Rev. Stat. 1979, ch. 37, par. 702—7), and his 17th birthday, upon which he would lose his immunity under the Juvenile Court Act. The court could properly have found defendant to be mentally mature for his age but the evidence was strong that he was emotionally and physically immature. Defendant's prior history showed a combination of unfortunate home and family life and only minor criminal involvement until shortly before the offense, when it became more serious.

The heart of the case concerns questions of (1) whether in aid of defendant's rehabilitation, there were "facilities particularly available to the juvenile court," (2) "whether the best interests of the minor and the security of the public may require that the minor continue in custody or under supervision for a period extending beyond his minority," and (3) the danger which defendant presented to society and the likelihood of his being rehabilitated. These are not easy questions, and it should be noted that the trial judge pondered for three days his ruling on the petition for leave to prosecute.

Section 5—8—6(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—6(c)) provides that when an offender under 17 years of age is sentenced to imprisonment, he be committed to the juvenile division of the Department of Corrections where the juvenile

will remain until the juvenile's 21st birthday, provided that after the juvenile's 17th birthday, the court may order the juvenile transferred to the adult division of the Department of Corrections. A juvenile committed to the Department of Corrections under the Juvenile Court Act is also committed to the juvenile division of that department. (Ill. Rev. Stat. 1979, ch. 37, par. 705—10.) Thus, if commitment to the Department of Corrections was to be the ultimate disposition of the minor, the availability of facilities for rehabilitation would be the same regardless of whether he had been dealt with by juvenile or criminal proceedings. The evidence was strong that the minor was presently dangerous and needed to be incarcerated. Although the professional witnesses indicated a preference that the Department of Corrections not be the entity to furnish the incarceration, there was no evidence of any viable alternative. In ruling upon the motion for leave to prosecute, the trial court indicated that commitment to the Department of Corrections would likely be required even if juvenile proceedings were determined to be the proper procedure. That determination was well within the court's discretion.

Pursuant to proceedings under the Juvenile Court Act, the defendant could be kept in custody only until his 21st birthday (Ill. Rev. Stat. 1979, ch. 37, par. 705—11(1)) whereas, if defendant was convicted on criminal charges he could be incarcerated under the provision of section 5—8—6(c) of the Unified Code of Corrections for the term of his sentence less good conduct credits (Ill. Rev. Stat. 1979, ch. 38, par. 1003—6—3). Every expert testifying considered defendant to be likely to be rehabilitated within the time he would reach his majority, and some of that testimony indicated that incarceration beyond that time would be counter-productive. However, those witnesses did not and could not speak with certainty as to how the defendant might progress. The opinion of the experts concerning the psychological prognosis of the defendant was very helpful to the court, but the court was not required to accept it. *Marcus v. Marcus* (1974), 24 Ill. App. 3d 401, 320 N.E.2d 581; 31 Am. Jur. 2d *Expert and Opinion Evidence* §186 (1967); see also *People v. Hamilton* (1980), 80 Ill. App. 3d 794, 400 N.E.2d 599.

Section 2—7—3(a) of the Juvenile Court Act, in setting forth the criteria for the court's consideration in determining whether to allow criminal prosecution, lists the best interests of the minor and the security of the public in the conjunctive. However, earlier in that subparagraph, in setting forth the findings required to justify allowing prosecution, the best interests of the minor and that of the public are listed in the disjunctive. Thus, a finding of either supports permitting criminal prosecution. The court could have concluded that defendant appreciated the substantial risk he was taking with the life of his half sister. Under those circumstances the offense performed would have been most dastardly even if Robin

had survived. The court could have concluded that the seriousness of the offense would have been depreciated if lengthy incarceration was not imposed. This, plus the possibility that defendant might continue to be dangerous after reaching his 21st birthday, the latest date he could be held in custody if juvenile proceedings were used, supported the trial court's rulings.

The trial court was within its discretion in permitting filing of criminal charges and refusing to vacate that order.

We likewise do not find the length of the sentence to be a breach of discretion. (*People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541; *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) Any reduction from 24 years to 20 years would constitute a tinkering with that sentence.

The rulings of the trial court are affirmed.

Affirmed.

CRAVEN and WEBBER, JJ., concur.