THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEVEN NEWELL *et al.*, Defendants-Appellants.

First District (4th Division)   No. 83—545

Opinion filed July 25, 1985.—Rehearing denied August 28, 1985.

James J. Doherty, Public Defender, of Chicago (Gwendolyn M. Bryant, Assistant Public Defender, of counsel), for appellant Steven Newell.

Steven Clark and Elizabeth Clarke, both of State Appellate Defender's Office, of Chicago, for appellant Lewis Jackson.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Mary Ellen Dienes, and Peter J. Szatkowski, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

Defendants, Steven Newell and Lewis Jackson, were convicted of murder (Ill. Rev. Stat. 1981, ch. 38, pars. 9—1(a)(1) and (a)(2)) following a bench trial in the circuit court of Cook County. On appeal, Jackson, 15 years old at the time of the offense, contends that the juvenile court abused its discretion by transferring him to the adult criminal court. Both Jackson and Newell contend that the trial court abused its discretion by (1) allowing their attorneys to represent them

jointly, depriving them of their right to effective assistance of counsel; (2) refusing to admit as evidence testimony that someone else committed the offense; and (3) admitting as evidence at trial statements of the victim under the dying declaration exception to the rule against hearsay.

We affirm.

Eric Hunter was fatally shot on July 15, 1982, at approximately 9 p.m., in Trumbull Park, 2400 East 105th Street, in Chicago. No one disputes that two offenders participated in the shooting, one individual committing the crime at the behest of the other.

Chicago police officers arrested defendants as suspects in the crime on the following day, July 16, 1982. Following a hearing on September 29, 1982, a judge of the juvenile court granted the State's motion to transfer Jackson to the criminal court to be tried, along with Newell, as an adult.

The trial began January 12, 1983. The record shows that the State presented four witnesses who identified defendants as the persons who participated in the shooting. Some of the witnesses identified Jackson as "K.K." and Newell as "Face." The witnesses, Ella Daniels, Anthony Herring, Michael Jackson, and Treandus Hunter, were all at Trumbull Park on July 15, 1982, at about 9 p.m.

The testimony of the State's witnesses is summarized here. Defendants first approached Ella Daniels, Daniels' sister, Eric Hunter, and Anthony Herring in Trumbull Park, at approximately 7 p.m. Defendant Jackson spoke briefly with them, then walked away with Newell. At about 9 p.m., defendants returned to the park. Daniels was with Eric and his brothers Treandus and Luther, Michael Jackson, and several others. Defendants approached the Hunter brothers, made gang identification signs, and spoke briefly with them.

The defendants then ran into the park, with Eric and Michael in pursuit. Defendants halted in the middle of the park, where defendant Jackson produced a pistol and fired once in the air. Defendant Newell then said, "Why are you shooting in the air? Shoot one of [them]." Defendant Jackson pointed the pistol at Michael. Newell then said, "No, not him, shoot that punk." Defendant Jackson then fell to his knees, shot Eric Hunter in the back as Eric and Michael fled, then ran from the scene with Newell. All four witnesses identified defendants in police lineups on the following night.

Defendant Jackson testified that he was in the park at the time of the shooting, but he did not participate in the offense. Some defense witnesses testified that defendant Jackson did not have the nickname "K.K.," and other defense witnesses testified further that another

person, Kevin Thomas, was known as "Face" or "K.K." Newell presented several witnesses whose testimony accounted for his whereabouts from approximately 5 p.m. to midnight on the night of the shooting. Both the State and the defendants claimed that the testimony of the opposing side was conflicting and incredible.

On January 25, 1983, the trial court found defendants guilty of murder. At the end of a sentencing hearing on February 16, 1983, the court sentenced Jackson to a prison term of 20 years and Newell to a prison term of 25 years. Defendants appeal.

I

■ Defendant Jackson contends that the trial court abused its discretion by transferring him from juvenile court to criminal court. Fifteen years old at the time of the offense, Jackson was subject to the jurisdiction of the juvenile court. (Ill. Rev. Stat. 1981, ch. 37, par. 702—2.) The State petitioned the court to transfer Jackson to criminal court for trial as an adult. The record shows that a probation officer opposed the transfer at a hearing on the petition and that this was Jackson's first offense. The court, after reviewing the evidence in light of the factors set forth in section 2—7 of the Juvenile Court Act (Ill. Rev. Stat. 1981, ch. 37, par. 702—7(3)), ordered Jackson to be transferred to criminal court.

Jackson claims that the evidence presented at the transfer hearing was insufficient to support the transfer order. He argues that a transfer decision is generally based on both the commission of a serious offense and a serious felony record. He relies on *People v. Liggett* (1980), 90 Ill. App. 3d 663, 413 N.E.2d 534, *People v. Baxtrom* (1980), 81 Ill. App. 3d 653, 402 N.E.2d 327, and *People v. DeVore* (1978), 62 Ill. App. 3d 412, 378 N.E.2d 1302, where the court upheld transfer orders involving serious offenses by juveniles with serious felony records.

Section 2—7 of the Juvenile Court Act (Act) provides:

"(3) If a petition alleges commission by a minor 13 years of age or over of an act which constitutes a crime under the laws of this State, and, on motion of the State's Attorney, a Juvenile Judge, designated by the Chief Judge of the Circuit to hear and determine such motions, after investigation and hearing but before commencement of the adjudicatory hearing, finds that it is not in the best interests of the minor or of the public to proceed under this Act, the court may enter an order permitting prosecution under the criminal laws.

(a) In making its determination on a motion to permit prose-

cution under the criminal laws, the court shall consider among other matters: (1) whether there is sufficient evidence upon which a grand jury may be expected to return an indictment; (2) whether there is evidence that the alleged offense was committed in an aggressive and premeditated manner; (3) the age of the minor; (4) the previous history of the minor; (5) whether there are facilities particularly available to the Juvenile Court for the treatment and rehabilitation of the minor; and (6) whether the best interest of the minor and the security of the public may require that the minor continue in custody or under supervision for a period extending beyond his minority." Ill. Rev. Stat. 1981, ch. 37, par. 702—7(3).

Under the statute, the State need only present sufficient evidence to persuade the juvenile court, in the sound exercise of its discretion, that transfer is warranted in light of the statutorily prescribed criteria. (*People v. Taylor* (1979), 76 Ill. 2d 289, 303-04, 391 N.E.2d 366, 372.) There is no constitutional requirement that the Act prescribe a precise mathematical formula to govern the judge's discretion. (76 Ill. 2d 289, 305.) No single criterion is all determinative, and the application of each need not be of equal weight. (*People v. Cater* (1979), 78 Ill. App. 3d 983, 988, 398 N.E.2d 28, 32.) The role of this court is to determine whether, in light of the statutory criteria, the judge of the juvenile court abused his discretion. Although the judge of the juvenile court need not make a formal statement of reasons or conventional findings of fact, he or she must preserve a sufficiently explicit record so that we can meaningfully review his or her exercise of discretion. *People v. Taylor* (1979), 76 Ill. 2d 289, 300-01.

Applying these principles to the case at bar, we hold that the juvenile court did not abuse its discretion by transferring Jackson to criminal court. The record shows that the judge of the juvenile court explicitly reviewed the evidence before him in light of the statutory criteria and made findings of fact before ordering the transfer.

The judge found that the application of each criterion to the evidence before him supported a transfer order. Referring to the fourth criterion, the previous history of the minor, the judge found six prior "station adjustments" and one court referral for burglary. "Station adjustments" are events where the police, after taking a juvenile to the police station, decide that the juvenile will not be prosecuted. (*People v. M.D.* (1984), 101 Ill. 2d 73, 79, 461 N.E.2d 367, 370.) We have held them to be "probative and relevant because they enable the trial court to determine the proper disposition." (*People v. M.D.* (1984), 101 Ill. 2d 73, 79, quoting *In re McClinton* (1978), 63 Ill. App.

3d 956, 959, 380 N.E.2d 970, 972.) Given the combination of all these factors with corroborating evidence in the record, we find no abuse of discretion by the juvenile court.

## II

■ Defendants contend that the trial court abused its discretion by allowing two attorneys from the same firm to represent them jointly, depriving them of their right to effective assistance of counsel, guaranteed by the sixth amendment to the United States Constitution.

An accused's sixth amendment right to effective assistance of counsel is fundamental and includes a correlative right to representation free from conflicts of interest. (See *Cuyler v. Sullivan* (1980), 446 U.S. 335, 64 L. Ed. 2d 333, 100 S. Ct. 1708; *Holloway v. Arkansas* (1978), 435 U.S. 475, 55 L. Ed. 2d 426, 98 S. Ct. 1173; *Glasser v. United States* (1942), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457.) A defendant is entitled to the undivided loyalty of his attorney. (*People v. Stoval* (1968), 40 Ill. 2d 109, 111, 239 N.E.2d 441, 443.) Thus, defense counsel should not represent conflicting interests or undertake the discharge of inconsistent obligations. The Illinois Supreme Court has fashioned a *per se* rule to protect these rights: where an attorney representing a defendant has an actual or possible conflict of professional interests, a reviewing court will presume prejudice and reverse the conviction. (*People v. Stoval* (1968), 40 Ill. 2d 109, 113; *People v. Washington* (1984), 101 Ill. 2d 104, 109-11, 461 N.E.2d 393, 395-96.) If one member of a law firm has a conflict of interest, the conflict is imputed to all members of the firm. *People v. Arreguin* (1981), 92 Ill. App. 3d 899, 902, 416 N.E.2d 402, 404.

Relying on these principles, defendants cite several instances in the record where they claim their attorneys jointly represented them. Attorney Larry Levy represented Jackson, and attorney Scott Glieberman represented Newell. Both attorneys were from the same firm. Before trial, Levy entered an appearance on behalf of Newell but represented Jackson at trial. At the beginning of trial, Levy told the trial court that he and Glieberman would separately question witnesses to "facilitate the procedure of the trial," and that they discussed and coordinated defendants' defenses. At the close of the State's case in chief, Glieberman asked the court to admit into evidence the testimony of Laura Adams, describing the perceived conflict:

> "MR. GLIEBERMAN: It came to our attention, Mr. Levy and mine, that there was a witness named, 'Laura Adams.' She

would be coming to Court. We had noticed her name, listed as a State's witness. She had approached us, with knowledge of certain facts, surrounding this case, and we talked to her about that testimony. As the Court knows, Mr. Levy and I are from the same office, and we represent both Defendants. However for the ease of this trial, we decided that we should each take one Defendant and represent one defendant. One of the problems that arises is that if Ms. Adams' testimony is allowed, there would be a conflict because her statements would implicate one of the defendants, that defendant being LEWIS JACKSON."

Laura Adams would have testified that Kevin Thomas telephoned her at about 9:20 p.m. and told her that he shot Eric Hunter. He also implicated Jackson. The trial court ruled that the testimony was inadmissible because it was hearsay.

Defendant Newell additionally argues that Glieberman had divided loyalty between him and Jackson because the attorney failed to make an argument implicating Thomas. There is no dispute that the shooting involved only two persons, and that a third person, Thomas, was also known as "Face." Jackson admitted that he was in the park, while Newell denied his presence there. Therefore, if Newell was not in the park and if Thomas was actually involved in the shooting, then Jackson must have been the other offender with Thomas.

Responding to defendants' claims, the State stresses that each defendant had a separate theory of defense that was unantagonistic to the defense of the other. Levy represented Jackson at the juvenile court transfer hearing and continued to represent him at trial. During trial, Levy declined to give an opening statement, but Glieberman gave one on behalf of Newell. Levy cross-examined all of the State's witnesses on behalf of Jackson and Glieberman separately cross-examined them on behalf of Newell; Glieberman solely examined Newell's witnesses and Levy solely examined Jackson.

The *per se* rule that a reviewing court will presume prejudice and reverse a conviction based on an attorney's possible conflict of interest does not apply where the alleged ineffective assistance of counsel is due to joint representation. In those situations, a defendant must show "an actual conflict of interest manifested at trial." (*People v. Berland* (1978), 74 Ill. 2d 286, 299-300, 385 N.E.2d 649, 655.) The conflict must be actual; speculative or hypothetical conflicts are insufficient. *People v. Berland* (1978), 74 Ill. 2d 286, 301.

■ Applying these principles to the instant case, we can discern from the record neither any joint representation of defendants nor

the actual conflict of interests that *Berland* requires. The record shows that Levy and Glieberman each represented their individual clients. To allow the isolated facts cited by defendants to take precedence over the general behavior of the participants, as reflected in the record, would place form over substance. Viewing the record as a whole, we find no actual conflict in the manner in which defendants' counsel represented them.

Defendants' contention that the testimony of Laura Adams introduced a conflict of interests between their attorneys fails because the trial court deemed the testimony hearsay and therefore inadmissible. A conflict of interest argument based on testimony that was not admitted into evidence would be the same type of speculation that *Berland.*prohibits.

The related contention that Glieberman's failure to raise the argument that Kevin Thomas was also known as "Face"—exculpating Newell and inculpating Jackson—must also fail. The courts of this State "have refused to find hostility between the interests of criminal codefendants based on the mere possibility that one strategy available to defense counsel would have helped one defendant at the expense of another." *People v. Echols* (1978), 74 Ill. 2d 319, 327-28, 385 N.E.2d 644, 648.

Jackson, relying on *People v. Mroczko* (1983), 35 Cal. 3d 86, 115-16, 672 P.2d 835, 852-53, 197 Cal. Rptr. 52, 70-71, lastly urges us to adopt a *per se* rule that a trial court must appoint separate counsel to represent indigent codefendants prior to trial to determine whether codefendants have antagonistic defenses at the outset of the proceeding.

■ We decline to follow the California approach. The joint representation of more than one defendant is not *per se* unconstitutional. (*Holloway v. Arkansas* (1978), 435 U.S. 475, 55 L. Ed. 2d 426, 98 S. Ct. 1173; *People v. Nelson* (1980), 82 Ill. 2d 67, 411 N.E.2d 261.) The general rule in Illinois is that jointly indicted defendants should be tried together, and the mere fact that defendants are to be tried jointly does not necessitate the appointment of separate counsel for each of them. (*People v. Doyle* (1978), 61 Ill. App. 3d 571, 575, 377 N.E.2d 1093, 1097.) The decisions of the United States Supreme Court and the Illinois courts furnish adequate guidance to attorneys jointly representing codefendants to avoid conflicts of interest that would impede the furnishing of effective assistance of counsel. See *People v. Robinson* (1979), 79 Ill. 2d 147, 402 N.E.2d 157.

We hold that defendants have not met the test set forth in *Berland*; they have not shown the existence of joint representation

that resulted in an actual conflict of interest. They have thus failed to show a deprivation of their sixth amendment right to effective assistance of counsel.

## III

■ Defendant Newell claims that the trial court abused its discretion by ruling that Laura Adams' proferred testimony was hearsay and therefore inadmissible. He argues that the trial court denied his right to present competent evidence that tends to prove his version of the occurrence (*People v. Watson* (1966), 36 Ill. 2d 228, 221 N.E.2d 645; *People v. Molsby* (1978), 66 Ill. App. 3d 647, 383 N.E.2d 1336), and thereby denied him a fair trial as guaranteed by the fourteenth amendment to the United States Constitution (*Chambers v. Mississippi* (1973), 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038).

Hearsay has been defined as follows:

> "Hearsay evidence is testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." (*People v. Carpenter* (1963), 28 Ill. 2d 116, 121, 190 N.E.2d 738, 741.)

Hearsay evidence is inadmissible at trial because it fails the common law tests to ascertain the truth of a statement—that a witness testify at trial under oath, in person, and subject to cross-examination. A court may admit a hearsay statement if the statement satisfies an exception to the rule against hearsay that Illinois courts recognize or an exception provided by statute. Cleary & Graham, Illinois Evidence sec. 801.1 (4th ed. 1984).

The trial court considered the testimony under two exceptions to the rule against hearsay: (A) as an excited utterance, and (B) as an admission against interest. In ruling that Adams' testimony was inadmissible under the excited utterance exception, the trial court found that the 20-minute time interval between the shooting and the declaration by Kevin Thomas to Adams was too long to ensure that the statement was spontaneous rather than fabricated. The court also ruled that Adams' proferred testimony was inadmissible under the admission against interest exception.

## A

An out-of-court statement may be admitted into evidence as an exception to the rule against hearsay if the statement is an excited utterance. The common law presumes that the excitement caused by a

startling event or condition temporarily stills the capacity for reflection, thus producing statements that are free of conscious fabrication. (*People v. Poland* (1961), 22 Ill. 2d 175, 180-81, 174 N.E.2d 804, 807; Cleary & Graham, Illinois Evidence sec. 803.3 (4th ed. 1984).) The requirements for an excited utterance are (1) the existence of an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) the absence of time within which a declarant may fabricate the statement, and (3) that the statement must relate to the circumstances of the occurrence. *People v. Poland* (1961), 22 Ill. 2d 175, 181; *People v. Grover* (1983), 116 Ill. App. 3d 116, 119, 451 N.E.2d 587, 589-90.

In resolving the question of whether it is reasonable to believe that the declarant acted without thought, or whether there existed the possibility that the declarant had deliberated in making a false statement, a trial court must consider all of the circumstances surrounding the making of the statement, including the time that elapsed between the occurrence and the declaration, and the distance that the declarant traveled from the scene of the occurrence before speaking. Whether a statement was sufficiently spontaneous to qualify for admission in evidence under this exception is a question for the trial judge, who possesses a reasonable degree of latitude in making his determination. The court's ruling will be held an abuse of discretion only if the statement is not so intimately connected with the event as to indicate a lack of premeditation. *People v. Grover* (1983), 116 Ill. App. 3d 116, 120.

It was well within the trial court's discretion to hold that the 20-minute interval between the shooting and Thomas' declaration did not assure an unreflected statement, and further, provided an opportunity for "intense calculation." Based on the above principles, we find no abuse of discretion in the trial court's determination that Thomas' declaration was not an excited utterance.

## B

■■ An out-of-court statement may be admitted into evidence as an exception to the rule against hearsay if it is a statement against interest. The common law presumes such statements to be reliable because people do not make false statements damaging to themselves. (Cleary & Graham, Illinois Evidence sec. 804.7 (4th ed. 1984).) In Illinois, however, it has long been the general rule that extrajudicial declarations of a third party, not made under oath, that he committed the crime are purely hearsay and, even though they are declarations against interest, are inadmissible. The rationale for excluding this type of evidence is to prevent perjured testimony that someone other

than the accused committed the crime. *People v. Lettrich* (1952), 413 Ill. 172, 178, 108 N.E.2d 488, 491-92.

The United States Supreme Court has held that the rule prohibiting the admission of declarations against interest should not be applied mechanically so as to deny a defendant's right to due process of law. (*Chambers v. Mississippi* (1973), 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038.) In *Chambers*, the court set forth four factors that provide considerable assurance that hearsay declarations against interest will be reliable: (1) whether the statement was made spontaneously to a close acquaintance shortly after the crime had occurred, (2) whether the statement was corroborated by other evidence, (3) whether the statement was self-incriminating and against the declarant's interest, and (4) whether the declarant was available for cross-examination. (410 U.S. 284, 300-01, 35 L. Ed. 2d 297, 311-12, 93 S. Ct. 1038, 1048-49.) Illinois courts use these factors in determining the admissibility of these statements (*People v. Craven* (1973), 54 Ill. 2d 419, 427-29, 299 N.E.2d 1, 5-6), and the absence of any one or more of these factors results in the exclusion of the statement as inadmissible hearsay. *People v. Bell* (1981), 96 Ill. App. 3d 857, 867, 421 N.E.2d 1351, 1359.

Thomas' declaration did not meet all of the *Chambers* requirements. The declaration was not corroborated by other evidence. Defendant Newell argues that it was because he shared the nickname "Face" with Thomas and because Thomas was present in the lineup with him. However, prosecution witnesses identified defendants in the lineups; they did not identify Thomas, and none of Newell's witnesses testified that Thomas was connected in any way with the shooting. Also, the declarant was unavailable for cross-examination. Although Newell points to references in the record during closing argument that Thomas was present throughout the proceeding, there is nothing in the record to indicate that Thomas was present in court at the time defense counsel sought admission of the hearsay declaration, and defense counsel never attempted to call Thomas as a witness. We hold that the trial court did not abuse its discretion by excluding from evidence Kevin Thomas' statement.

IV

■ Defendants lastly contend that the trial court abused its discretion by admitting into evidence statements of the victim under the dying declaration exception to the rule against hearsay.

A dying declaration is a statement of fact by the victim concerning the cause and circumstances of his death. To be admissible into

evidence as an exception to the rule against hearsay, a dying declaration must appear to have been made by the victim under the fixed belief and moral conviction that death is impending and certain to follow almost immediately, without opportunity for repentance and in the absence of all hope of avoidance, when the victim has despaired of life and looks to death as inevitable and at hand. Before such a statement is admitted into evidence, the trial court must make an initial determination as to its admissibility and must be convinced, upon weighing all the facts and circumstances surrounding the declaration, that beyond a reasonable doubt all of the elements necessary for a dying declaration are present. The trial court must also be convinced that the declarant was sufficiently possessed of his mental faculties as to be able to have accurately perceived, recollected and communicated the circumstances surrounding his death. *People v. Davis* (1981), 93 Ill. App. 3d 217, 231, 416 N.E.2d 1197, 1208.

Ella Daniels testified that she approached Eric Hunter after he was shot and lay bleeding; Hunter was still alive and spoke as follows:

"THE WITNESS: He said, 'man, they must go.' He said, 'KK and Face shot me,' and he said, 'I love my mother, tell my mother I love her,' then he said, 'Better yet, I'll tell her.'"

Defendants contend that Hunter, saying that he would speak personally with his mother, did not believe that his death was imminent.

We addressed this issue in *Davis*, where we stated:

"To say that the declarant must have lost all hope of recovery is merely to say that the declarant must have truly believed he was dying and his death was imminent. To require that the declarant should have lost every scintilla of a hope of recovery would be to require the impossible.

In most cases, a dying person will cling to whatever hope of recovery exists, no matter how unreasonable, even until his last desperate breath has expired. Thus, if we were to hold that the declarant is required to have absolutely no hope of recovery, no matter how unreasonable that hope is, we would have to hold that no such thing as a dying declaration exists. A statement should not be rejected as a dying declaration when only nebulous rays of hope exist. [Citation.] From the circumstances surrounding the deceased's statement in this case, we believe the trial court properly found that deceased believed he was dying and his death was imminent and, though deceased clinged to an unreasonable hope of recovery, such a nebulous ray of hope did not render the statement inadmissible." 93 Ill. App. 3d 217, 232, 416 N.E.2d 1197, 1208.

We hold that the trial court did not abuse its discretion by admitting into evidence statements of the victim under the dying declaration exception to the rule against hearsay.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JIGANTI, P.J., and LINN, J., concur.