THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
STEVEN J. UNDERWOOD, Defendant-Appellant.

Fourth District   No. 13706

Opinion filed August 1, 1977.

MILLS, J., concurring in part and dissenting in part.

Brian M. Nemenoff, of Peoria, for appellant.

Richard M. Baner, State's Attorney, of Eureka (Robert C. Perry and Jane F. Bularzik, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE REARDON delivered the opinion of the court:

The defendant, Steven Joseph Underwood, appeals his conviction for aggravated battery, a violation of section 12—4 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 12—4). The facts giving rise to the

offense relate to an encounter between the defendant and a young married couple, Richard and Lori Downs, during the evening of September 14, 1975, in Spring Bay, Illinois.

A car belonging to the Downs couple broke down a few blocks from their home in Spring Bay. While Richard Downs worked on the car, Lori Downs began walking home to get their pickup truck and a chain to tow the car. On the way, she was met by three teen-aged boys who followed her, yelling obscenities.

Lori Downs was upset by the incident and, upon returning to the disabled car, she told her husband about the taunts shouted by the three boys. Her husband also became upset and they both boarded the truck so that they might search for the three boys to tell them to leave Lori Downs alone. Within minutes, the Downs couple pulled into a service station where they spotted the defendant and two of his friends.

When Richard Downs loudly challenged the three boys about bothering his wife, two of the boys walked away, while the defendant lingered and responded. Downs stepped out of his truck and picked up a piece of chain that was two or three feet long. A shoving match ensued, after which Downs returned to his truck. As the truck pulled away, the defendant approached, called Downs some names and shouted about fighting without the chain. Downs again got out of the truck and scuffled with the defendant for about one minute. During the course of this struggle, Downs struck the defendant in the mouth and the defendant stabbed Downs in the stomach three times.

Within minutes, the defendant departed from the scene with his mother who had driven up after the stabbing. When they arrived home, the defendant, while crying and bleeding from the mouth, told his mother and stepfather what had happened. Soon the police arrived and transported the defendant to the Woodford county jail. During that trip, the defendant asked a deputy sheriff if he was correct "in using a knife for self-defense." Later, he stated at the jail that, "I stabbed him once, I don't know whether I got him the second time, but I tried."

The defendant was 15 years old at the time of the offense. On September 16, 1975, the Office of Court Services for the circuit court filed a petition seeking to declare the defendant a ward of the court under the Juvenile Court Act (Ill. Rev. Stat. 1973, ch. 37, par. 701—1 *et seq.*). On September 25, 1975, the State filed a petition to prosecute the defendant-minor as an adult pursuant to section 2—7 of the Act (Ill. Rev. Stat. 1973, ch. 37, par. 702—7) which was granted by the court. On October 3, 1975, the grand jury returned an indictment charging the defendant with aggravated battery. After being tried before a jury, the defendant was found guilty and sentenced to 2 to 6 years imprisonment.

On appeal, the defendant alleges that (1) the court abused its discretion

in granting the petition to prosecute as an adult and that (2) the court erred in not preparing and giving a jury instruction defining the term "reasonably believes" which is contained in the self-defense instruction that was given to the jury. Illinois Pattern Jury Instructions, Criminal, No. 24.06 (1968) (hereinafter cited as IPI Criminal No. 24.06).

■■ Whether a minor is to be treated under the provisions of the Juvenile Court Act or is to be prosecuted as an adult is a question involving the exercise of the circuit court's discretion. (Section 2—7 of the Juvenile Court Act (Ill. Rev. Stat. 1973, ch. 37, par. 702—7); *People v. Rahn* (1974), 59 Ill. 2d 302, 304-05, 319 N.E.2d 787, 789; *People v. Jiles* (1969), 43 Ill. 2d 145, 149, 251 N.E.2d 529, 531.) Reviewing courts are limited to determining whether the circuit court's findings are against the manifest weight of the evidence or whether the findings reflect an abuse of discretion. *People v. Curry* (1975), 31 Ill. App. 3d 1027, 1029, 335 N.E.2d 515, 517.

Section 2—7(3)(a) of the Juvenile Court Act provides that the court, in ruling on a petition to prosecute as an adult, shall:

"\* \* \* consider among other matters: (1) whether there is sufficient evidence upon which a grand jury may be expected to return an indictment; (2) whether there is evidence that the alleged offense was committed in an aggressive and premeditated manner; (3) the age of the minor; (4) the previous history of the minor; (5) whether there are facilities particularly available to the Juvenile Court for the treatment and rehabilitation of the minor; and (6) whether the best interest of the minor and the security of the public may require that the minor continue in custody or under supervision for a period extending beyond his minority." Ill. Rev. Stat. 1973, ch. 37, par. 702—7(3)(a).

In the instant case, the trial court conducted a full hearing on the wardship petition and on the petition to prosecute as an adult. At the hearing, defense counsel conceded that the grand jury could be expected to return an indictment on the evidence presented at the hearing. Counsel also agreed that the alleged offense was aggressive, although he contended that it was a "spur-of-the-moment thing" and not premeditated. The evidence, however, was sufficient to support a finding that the attack was premeditated because the defendant stabbed Downs three times with an opened pocket knife after Downs had set his chain aside. Although the defendant was a 16-year-old at the time of his trial, he was a large child who, in his mother's words, acted like a 20-year-old. The court considered a detailed survey of the defendant's social history which was compiled by the assistant director of court services. The sheriff's and defendant's testimony reflect that the defendant was on probation for a prior burglary, that the defendant had used hard drugs and that he

continued to drink alcoholic beverages and smoke marijuana. The record also reflects that the court considered the adult and juvenile rehabilitation or treatment facilities available for the defendant and the benefit that might accrue if those facilities would be used in the instant case.

On appeal, even though the record reflects that the trial court considered all of the factors set forth in section 2—7(3)(a) of the Juvenile Court Act, the defendant alleges that the court abused its discretion in granting the petition to prosecute as an adult. The defendant contends that the circuit court granted the petition to prosecute as an adult in order to prevent an appeal on the question of whether the defendant was entitled to release from custody during the time the court considered the petition. The defendant has pointed out that, at the close of the hearing on the petition, the court first stated that it would take the petition under advisement for a day or two and that the defendant would be returned to the county's juvenile detention facilities. When defense counsel requested that the defendant be released pursuant to section 4—2 of the Juvenile Court Act (Ill. Rev. Stat. 1973, ch. 37, par. 704—2) because he had already been detained for ten judicial days, the State objected, and the court stated it was going to go ahead and grant the petition to prosecute as an adult to prevent a muddying of the record.

■■ The court permitted the sheriff and a court services officer to testify concerning their opinions on the ultimate issue of whether the petition to prosecute as an adult should be granted. The court, however, later stated that it was unfair to ask the court services officer for her opinion. Although we agree that one of the principal functions of the court services officer is to gather facts for the court, we find it curious that the judge permitted the recommendation of the sheriff which urged the defendant's prosecution as an adult but was critical of the contrary recommendation of the court services officer. In view of the fact, however, that the record clearly reflects that the judge recognized and gave sufficient consideration to the factors set forth in section 2—7(3)(a) of the Juvenile Court Act, we hold that he did not abuse his discretion in granting the petition to prosecute as an adult.

■■ In regard to the defendant's second allegation of error, we note that a defendant cannot ordinarily complain on appeal that a jury instruction has not been given if he failed to tender that instruction at trial. Supreme Court Rule 451(c) (58 Ill. 2d R. 451(c)), however, says that substantial defects in jury instructions are not waived if the interests of justice so require. *People v. Grant* (1977), 46 Ill. App. 3d 125, 131, 360 N.E.2d 809, 815.

In the instant case, the defendant tendered his non-IPI instruction number 14 which read:

"When I say 'reasonably believes' I mean that if a person is

assaulted in such a way as to produce in the mind of a reasonable person a belief that he is in actual danger of suffering great bodily harm, he will be justified in defending himself, although the danger be not real but only apparent. Such a person will not be held responsible, criminally, if he acts in self defense from real and honest convictions as to the character of the danger induced by reasonable evidence although he may be mistaken as to the extent of the actual danger."

The State objected, saying that the tendered instruction was argumentative and that defendant should have tendered IPI Criminal No. 4.13 which properly defines reasonable belief—a term used in the self-defense instruction which was given to the jury. (IPI Criminal No. 24.06.) When the court refused defendant's tendered instruction number 14, the defendant neither submitted the applicable IPI instruction nor did he ask for additional time to prepare an alternative instruction.

At trial, the defendant raised the issue of self-defense by alleging that Richard Downs was the aggressor. Although the evidence is conflicting on the question of who the aggressor really was in the instant case, we note that the alleged victim, Richard Downs, has also been convicted of aggravated assault, a violation of section 12—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 12—2), in connection with the same incident.

In *People v. Horton* (1954), 4 Ill. 2d 176, 122 N.E.2d 214, our supreme court stated:

"The common-law doctrine that one must exhaust every effort to escape before he can avail himself of the right of self-defense does not prevail in this State. It has been held that if a person is in a place where he has a lawful right to be and is unlawfully assaulted and put in apparent danger of his life, or great bodily harm, he need not attempt to escape but may lawfully stand his ground and meet force with force, even to the taking of his assailant's life if necessary. [Citations.] However, if the evidence shows that the jury was justified in finding no element of self-defense entered into the assault[,] the rule enunciated in these cases would be of no avail to the defendant. [Citations.]" (4 Ill. 2d 176, 183, 122 N.E.2d 214, 217; accord *People v. Moore* (1976), 43 Ill. App. 3d 521, 526-27, 357 N.E.2d 566, 570.)

Illinois, like a majority of jurisdictions, therefore, does not require that one "retreat to the wall" before acting in self-defense. LaFave & Scott, Criminal Law §53, at 395-96 (1972).

In view of the fact that the evidence presented at trial reflects that Richard Downs was the aggressor at least through a large part of the incident in question, and in view of the fact that the defendant had no

duty to retreat from Downs' initial attack, we find that the defendant's allegation of self-defense was critical to the ultimate resolution of the prosecution. It, therefore, was imperative that the jury be fully instructed on the law pertaining to the justifiable use of self-defense. One of the instructions which could have been given to the jury is IPI Criminal No. 4.13 which defines the term "reasonably believes"—a critical term contained in the instruction on self-defense which was given to the jury.

Although we recognize that it is for the jury to determine whether the defendant acted in self-defense, we also recognize that the issue is close in this case. Indeed, the evidence might be viewed as establishing either that Downs was the aggressor in a single, continuous attack on the defendant, or that a second incident commenced when the defendant told Downs to come out of the truck and fight without the chain.

Lori Downs testified that her husband was armed with the chain when he exited from the truck a second time. A disinterested witness, Margie Draggist, testified that Downs hurriedly exited from the truck at the start of the second incident, that Downs threw a punch but that she did not see the defendant throw a punch at that time. Regina McCann, another disinterested witness, testified that the defendant "* * *" took a couple of steps backwards * * *" when Downs stepped from the truck at the start of the second incident. McCann stated that Downs approached the defendant and was "* * * right there in front of him," pushing as the defendant continued to retreat for approximately one minute. After McCann saw Downs strike the defendant, she saw Downs bend over and heard him shout that he had been stabbed. The defendant then turned and walked away.

A jury which has been properly instructed might conclude that the evidence, although closely balanced, is sufficient to establish that the defendant was the aggressor throughout his entire confrontation with Downs.

■■ The precise question presented to the jury in the instant case was whether the defendant reasonably believed it necessary to use his knife to defend against Downs' actual use of force. The defendant attempted to have the jury instructed on the definition of "reasonably believes." The IPI definition of "reasonably believes" (IPI Criminal No. 4.13) should have been given to the jury in this case because the jury's resolution of the self-defense issue squarely rested on the jury's interpretation of the term "reasonably believes" in light of the facts of this case. The interests of substantial justice, therefore, require the reversal of the defendant's conviction for aggravated battery. Supreme Court Rule 451(c) (58 Ill. 2d R. 451(c)).

In refusing to give defendant's instruction No. 14, the trial judge inexplicably referred to IPI Criminal No. 2.03 which does not concern the

definition of the term "reasonably believes." Although we will not second-guess the judge's action, the judge might have thought he was referring to the IPI definition of "reasonably believes"—a definition which is found in IPI Criminal No. 4.13. In any event, the trial judge will, on remand, have an opportunity to correct or clarify this reference by giving IPI Criminal No. 4.13.

Accordingly, we reverse the defendant's conviction for aggravated battery. The cause is remanded to the circuit court for a new trial in accordance with this opinion.

Reversed and remanded.

CRAVEN, P. J., concurs.

Mr. JUSTICE MILLS, concurring in part and dissenting in part:

The majority is, of course, quite correct in its conclusion that the trial court did not abuse its discretion in permitting the defendant to be prosecuted as an adult. And I certainly concur. But the second issue is indeed another question.

I find neither horseback sense nor Aristotelian logic in the majority's reasoning.

A reading of the record of the evidence before the trial jury leads me to the unalterable conclusion that there were two separate and distinct confrontations between defendant Underwood and victim Downs. In essence, Downs yelled at the three boys about bothering his wife after which two of them walked away but Underwood stayed and carried on a dialogue with Downs. Downs then stepped out of his truck and picked up a chain. A shoving match then took place between Downs and Underwood after which Downs returned to his truck. As Downs prepared to drive away, defendant shouted further obscenities and something about fighting without the chain. Downs again got out of the truck and scuffled with the defendant. His wife said he took the chain with him the second time, but she also said she "couldn't see his hands, just him." There is a void of any other direct testimony concerning the chain in the second melee, yet the specifics and context of the entire evidence clearly reflects that *Downs did not use a chain in clash* #2. During this second encounter, defendant stabbed Downs in the stomach three times.

The evidence, as I view it, reflects that the defendant deliberately initiated a second, separate fight with Downs after the victim had returned to his pickup. The use of the knife was a deliberate, intentional act—in fact, in a statement to the authorities following the attack, Underwood even said, "I stabbed him once, I don't know whether I got him the second time, but I tried."

To boot, the mere fact that the individual justices of this court disagree as to the interpretation of the evidence as spelled out in the cold, hard record graphically demonstrates that this is a pure question of fact. Clearly, this was within the purview of the trier of fact and a reviewing tribunal should not tinker or meddle in factual interpretation unless the lower court committed clear error or abused its discretion. Neither is here present and we have no business second-guessing or meddling in the trial court's exclusive domain.

Against the backdrop of this evidence, I must fault the majority's holding on the "reasonably believes" jury instruction. Defendant tendered his own non-IPI instruction on reasonable belief and it was properly refused upon objection. The State even went so far as to suggest that defendant should have tendered the standard IPI Criminal Instruction 4.13. But defendant did not take the hint and neither submitted any other substitute instruction nor asked for additional time in which to prepare an alternative instruction. His was a procedural waiver.

I strongly disagree that under these tenuous circumstances the "interests of justice" doctrine of Supreme Court Rule 451(c) can be invoked.

I would affirm.