THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID HOWARD GREEN, Defendant-Appellant.

Third District   No. 79-524

Opinion filed July 30, 1980.

Robert Agostinelli and Michael Filipovic, both of State Appellate Defender's Office, of Ottawa, for appellant.

L. Patrick Power, State's Attorney, of Kankakee (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

On December 29, 1977, a three-count delinquency petition was filed against the defendant, David Howard Green, charging him with two counts of aggravated battery and one count of armed robbery. Subsequently, a petition to transfer the defendant from juvenile court to adult court was filed by the State, and on February 22, 1978, a hearing was held on the petition to transfer.

A juvenile investigation report was prepared for the transfer hearing. The report stated that David Green's age was 16 and that he was born on January 24, 1962. However, at the transfer hearing it was revealed that the minor's correct age was 15, having been born on January 24, 1963.

The juvenile investigation also revealed that the defendant's family consisted of a father who was unemployed due to a heart condition, a mother who was a housewife, and four brothers and sisters who lived at home. The family received public aid and food stamps. The defendant's school record revealed that he had graduated from grammar school but had been suspended by his high school for punching other students and for possessing a pair of brass knuckles. The report also disclosed that the defendant had no prior record of criminal behavior other than a "station adjustment" which was made in January 1977, because he allegedly threatened his father with a butcher knife.

Admitted into evidence at the transfer hearing were statements by the victim, by the defendant Green, and by his co-defendant Ashford.

The statement of the victim, Hezekiah Sims, related that at 9:30 p.m. on August 26, 1977, he got into his truck to go to work. At that time he was approached by Leroy Ashford and David Green. They told Sims that they wished to pick up a car which Sims had for sale. Sims told them to come back in the morning. Ashford then opened the driver's side door of the truck and hit Sims on the head with a jack handle lug wrench. Sims

retreated inside the truck. Ashford then took the lug wrench and started beating on the windshield of the truck. While Ashford was beating the windshield with the lug wrench, Sims heard him say, "I'm going to kill you." Realizing that Ashford could get into the truck right through the glass, Sims decided to get out of the truck and attempt to take away the lug wrench. After getting out of the truck, Sims was knocked down from behind. He did not know who pushed him. Sims then heard one of them say, "Let's run over him with the truck." He didn't know which of the two boys made the statement. The next thing Sims could remember was regaining consciousness with the truck on top of him.

According to the defendant's statement, the defendant merely went along with Ashford and took no active part in the attack on Sims. A statement by Ashford, however, portrays the defendant in a far more active role. According to Ashford the defendant participated in the assault on the victim Sims, helped pull him from the truck, and further participated in the act of driving the truck over the victim.

■■ In granting the transfer petition, the juvenile court judge made the following observations:

"I indicated in conversation—in casual conversation—that the State had two problems in this case. One problem was the fact the minor was only fifteen and the other was there was no prior adjudication in this County. I advised the State's Attorney at this time that I was not pre-judging the case, but merely pointing out the problem. However, the Statute deals with the age of thirteen, which seems to lessen the problem of the age of the boy being fifteen.

The report made by the Probation Officer refers to station-house adjustment, as well as the statement from someone at St. Anne School of occurrences and actions by the minor.

The Court looks at 702—7(3)(a) of the Juvenile Court Act. The Legislature has instructed me to consider among other matters, (1) whether there is sufficient evidence upon which a Grand Jury may be expected to return an Indictment. The Court is satisfied there is sufficient evidence for the Grand Jury to return an Indictment. Never having been on the Grand Jury and not knowing many judges in this State who have—it is an interesting criteria. I would assume the Grand Jury would do it because that jury does what the State's Attorney wants—usually.

(2) Whether there is evidence that the alleged offense was committed in an aggressive and premeditated manner. Mr. Green is not charged with a non-aggressive crime. He is not charged with burglary of a vacant house. He is not charged with criminal damage to property. He is not charged with simple battery where

you slap somebody. He is charged with two counts of aggravated battery and one count of armed robbery. Armed robbery is a Class One felony under the Criminal Code of this State, with a mandatory prison term. Aggravated battery is a Class Three felony and carries a one to ten possible. I do not think you can commit either aggravated battery or armed robbery without some kind of aggressive behavior, and arming yourself ahead of time to commit the aggravated battery would indicate some kind of premeditation.

(3) The age of the minor. I am on record in this Court saying age is an absolutely ridiculous criteria. To arbitrarily pick seventeen in this day and age doesn't make any sense. I have considered the age of the minor and I am concerned that the age is only fifteen.

(4) The previous history of the minor. There is no prior adjudication of this boy. There are other things set forth in the Probation Report any one of which, if true, are quite serious.

(5) Whether there are facilities available to the Juvenile Court for the treatment and rehabilitation of the minor. I don't know what that means. I suppose if Mr. Green were to be found guilty by a Juvenile Court proceeding, there falls down from on high a magic wand that creates a place—a facility of the State provided for rehabilitation. That raises some very interesting questions in my mind, and I might as well address them here as somewhere else.

I have available probation with some supportive services in this County. If Mr. Green were to be found to have some kind of mental problem, the Court can go to Tinley Park on its knees and beg them to take the boy and they have the power to say they won't. The Court cannot use the Department of Children and Family Services because they are not to be bothered with criminal type children. The Court has available to it the Department of Corrections, Juvenile Division, State of Illinois. The Court will not comment on the rehabilitation aspects of that agency. I don't know that I have any better facility to me through the Juvenile Court Act than is available to me under any other provision of the law.

(6) Whether the best interest of the minor and the security of the public require the minor to be continued in custody or under supervision for a period extending beyond his majority. If he were to be found guilty of armed robbery he would be sentenced to a period of from four years if it occurred prior to February 1st. If he were under Class X he could be sentenced to six to thirty with a day-for-a-day good time which lets him out in three or when his age if 21. If it is Class One under the old law he is 19. However, depending on his behavior in the facility of the State, he could be

denied his good time credit and he could be incarcerated for more than the minimum provided by the Statute.

There is a discrepancy in the facts of Mr. Ashford's activities in this case and Mr. Green's facts. There seems to be some question as to just how much Hezekiah Sims knows and can recall from the incident, although the statement taken from Mr. Sims did not seem to be complete in every detail. I suppose if I were to have to sit down and say it is four of these categories on one side and two on the other, then, therefore, I will do that—I could do it that way. I suppose what the Legislature is saying is that one has to have a feeling for the situation. There are some indications that have come out that things aren't all that good at home from the standpoint of the minor—his interactions with his home. It is not a facility that would be available to the Court if he remains under the Juvenile Court Act."

The first issue raised by the defendant is whether the juvenile court judge abused his discretion in waiving jurisdiction and allowing the defendant to be tried as an adult. It is the role of a reviewing court to ascertain whether the juvenile court judge has abused his discretion in evaluating the evidence in light of the statutory criteria set out in section 2—7(3)(a) of the Juvenile Court Act (Ill. Rev. Stat. 1979, ch. 37, par. 702—7(3)(a)). (*People v. Cater* (1979), 78 Ill. App. 3d 983, 398 N.E.2d 28.) However, there is no mathematical formula to be used to calculate the weight to be attributed to each factor and all of the relevant statutory factors need not be resolved against the defendant in order to justify the waiver of jurisdiction. *People v. Taylor* (1979), 76 Ill. 2d 289, 391 N.E.2d 366.

While the defendant here was only fourteen at the time of the commission of the charged offenses, on the evidence presented at the hearing, the juvenile court judge was justified in finding: that a grand jury would find sufficient evidence to indict the defendant; that the alleged offense was committed in an aggressive and premeditated manner, even though the defendant's statement to the police was that he was only a passive observer; that the defendant's prior history, although devoid of a criminal record, demonstrated aggressive and violent behavior on the part of the defendant; and that, within the knowledge of the juvenile court judge, there were no facilities particularly available for the rehabilitation and treatment of the defendant. (See *People v. Baxtrom* (1980), 81 Ill. App. 3d 653, 402 N.E.2d 327; *People v. Banks* (1975), 29 Ill. App. 3d 923, 331 N.E.2d 561.) In analyzing the final factor of whether the best interest of the minor and the security of the public require that the defendant be continued in custody or under supervision beyond his minority, the juvenile court judge noted that, although the defendant

could be given a greater than minimum sentence, the minimum sentence under either the sentencing law in effect prior to February 1, 1978, or that in effect thereafter, the defendant would be 19 or 21, respectively, upon release. The juvenile court judge, therefore, considered that the defendant might be detained no longer in the Department of Corrections if tried as an adult than he would be under the juvenile detention provisions.

■■ Based on the record in this case, we find no abuse of discretion in the waiver of jurisdiction of the juvenile court as to this defendant. Nor does the defendant's second issue have merit.

In the second issue, the defendant asks this court to reduce his sentence. After pleading guilty to robbery, the charges of aggravated battery and burglary being dismissed in return for the plea, the defendant elected to be sentenced under the "old" law and was sentenced to an indeterminate term of imprisonment of not less than three nor more than nine years.

■ It is the defendant's contention that the presumption of probation which was mandated by the amendment to the sentencing act (Ill. Rev. Stat. 1979, ch. 38, par. 1005—6—1(a), eff. February 1, 1978) applied to the defendant even though he elected to be sentenced under the prior law. Likewise, the defendant's argument is framed in language attempting to rebut the presumptive correctness of the sentence (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—4.1), by referring to the aggravating and mitigating factors which the new sentencing law requires the trial judge to consider. (Ill. Rev. Stat. 1979, ch. 38, pars. 1005—5—3.1, 1005—5—3.2.) This court, however, has determined that the standards set forth in the new sentencing act do not apply where the defendant has elected to be sentenced under the old law. *People v. Milam* (1980), 80 Ill. App. 3d 245, 399 N.E.2d 703.

■ Under the old law, the appropriate standard for reviewing a sentence is whether the defendant has demonstrated an abuse of discretion on the part of the sentencing judge. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) In this case, the victim was beaten with a tire iron, knocked to the ground, and while he lay there unconscious, was run over with his own truck. Considering the nature and circumstances of this offense, a greater than minimum sentence appears to be warranted. Ill. Rev. Stat. 1977, ch. 38, pars. 18—1(b), 1005—8—1(c)(3).

For the foregoing reasons the judgment of the Circuit Court of Kankakee County is affirmed.

Affirmed.

ALLOY, P. J., and BARRY, J., concur.