THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CALVIN OLLINS, Defendant-Appellant.

First District (3rd Division)   No. 1—88—0955

Opinion filed June 24, 1992, withdrawn.—New opinion filed October 28, 1992.

244

Thomas J. Royce, of Chicago (Ronald D. Menaker and Kent R. Carlson, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Inge Fryklund and Kenneth T. McCurry, Assistant State's Attorneys, of counsel), for the People.

JUSTICE TULLY delivered the opinion of the court:

This is an appeal by Calvin Ollins, who was found guilty by a jury of murder, aggravated criminal sexual assault, and aggravated kidnapping. He was sentenced to natural life for murder with concurrent sentences of 30 years for sexual assault and 15 years for aggravated kidnapping. The defendant argues on appeal: (1) he did not receive a legally adequate transfer hearing pursuant to section 5—4(3) of the Juvenile Court Act of 1987 (Ill. Rev. Stat. 1987, ch. 37, par. 805—4(3)); (2) the trial court did not properly consider the factors of (a) probable cause, (b) exigent circumstances, and (c) consent when it denied his motion to quash his arrest and suppress the evidence; and (3) the trial court erred when it denied his motion to suppress statements.

Ollins, a 14-year-old, was taken into custody on January 28, 1987, by the Chicago police and charged with the murder and sexual assault of Lori Roscetti. Ms. Roscetti had been a medical student at Rush Medical College. On January 29, 1987, a petition for adjudication of wardship stating the murder and sexual offense charges was filed in juvenile court. The State moved for the defendant to be tried as an adult under the Illinois criminal code. The State duly requested a transfer hearing pursuant to section 5—4(3) of the Juvenile Court Act of 1987 (Ill. Rev. Stat. 1987, ch. 37, par. 805—4(3)). A transfer hearing was conducted on March 27, 1987, granting the State's motion to try the defendant as an adult under the criminal code.

The defendant was indicted by a grand jury along with three other men. The defendant's counsel made motions to quash the arrest and suppress the statements. Those motions were denied.

The defendant was then tried by a jury and found guilty of murder, aggravated criminal sexual assault, and aggravated kidnapping. On March 10, 1988, the defendant was sentenced to imprisonment for his natural life without parole for the offense of murder. He was further sentenced to 30 years for the offense of sexual assault and 15 years for aggravated kidnapping. The sexual assault and the kidnapping charge sentences were to run concurrently with the murder sentence.

The defendant filed a notice of appeal from the orders of the juvenile court and the criminal court, the sentences, and the denial of certain post-trial motions.

On October 18, 1986, Lori Roscetti and a fellow medical student were studying for mid-term examinations on campus. At approximately 1 a.m., they left the campus in Roscetti's beige, four-door Sub-

aru. Roscetti dropped off the other student at his apartment and began to drive to her apartment. Both apartments were located in the vicinity of the medical campus.

On October 18, 1986, a police officer of the Chicago and North Western railroad, on a routine patrol at approximately 4 a.m., discovered a beige four-door Subaru on railroad property near 16th and Loomis. A female body was lying on the ground near the car. No keys to the car were found. At approximately 5:15 a.m., Detective James Capesius of the Chicago police arrived on the scene. He testified later that he saw a partially dressed female in a blue jogging suit lying on the ground. The woman appeared to have been severely beaten. The cause of death was later established by the coroner's office as multiple blunt trauma injury.

Pursuant to intensive police investigation of the crime, Ollins became a suspect. He was subsequently arrested on January 28, 1987, in the early morning hours at his home. After the defendant was read his *Miranda* rights, the police searched the defendant's belongings. At some point during this search the police allege that the defendant made a statement to the effect that "he didn't have any keys." The defendant later denied making this statement. At the time of the arrest, a person in the defendant's apartment signed a consent to search form for the police.

After police custodial processing, the defendant was interviewed by Detective Mercurio and Officer McHugh of the Chicago police department and Assistant State's Attorney Susan Sussman. The defendant was told there was a possibility he would be prosecuted as an adult. The defendant told Sussman that he had been treated fairly by the police officers. During the interview with Sussman, the defendant said he wished to make a statement. The defendant then made the statement, the statement was read to him, and corrections were made by the defendant and initialed as necessary.

The State made a motion to transfer the defendant from the juvenile court to allow prosecution under the criminal laws which was granted on March 27, 1987. The defendant then moved to (1) quash his arrest, (2) suppress the evidence gathered pursuant to the arrest, and (3) suppress statements. The trial court began hearing evidence on these matters on January 13, 1988. The trial court first considered the evidence as to probable cause for the arrest of the defendant. The court found sufficient evidence to warrant probable cause. The court also found that exigent circumstances were present incident to the arrest of the defendant. Therefore, the defendant's motion to quash the arrest and to suppress was denied.

The defendant filed a pretrial motion to suppress statements in which he alleged that he was not given his *Miranda* rights. The defendant said he made certain statements because the police promised him he could go home if he cooperated. Therefore, the statements were not voluntarily given. The trial court found that the State had sustained its burden of proof to establish the voluntariness of the statements made by the defendant.

The first issue the defendant raises on review questions the legal adequacy of the transfer hearing which waived the jurisdiction of the juvenile court. The defendant maintains that the trial judge abused his discretion in interpreting the criteria defined by section 5—4 of the Juvenile Court Act of 1987 (Ill. Rev. Stat. 1987, ch. 37, par. 805—4(3)(a)).

The trial court is bound to consider the criteria enunciated in the Juvenile Court Act. (*People v. Clark* (1987), 119 Ill. 2d 1, 12, 518 N.E.2d 138.) The Juvenile Court Act lists six specific factors the trial court must consider in making its evaluation whether or not to transfer a juvenile to the criminal court's jurisdiction. (Ill. Rev. Stat. 1987, ch. 37, par. 805—4(3)(a).) Those factors are:

> "In making its determination on a motion to permit prosecution under the criminal laws, the court shall consider among other matters: (1) whether there is sufficient evidence upon which a grand jury may be expected to return an indictment; (2) whether there is evidence that the alleged offense was committed in an aggressive and premeditated manner; (3) the age of the minor; (4) the previous history of the minor; (5) whether there are facilities particularly available to the Juvenile Court for the treatment and rehabilitation of the minor; and (6) whether the best interest of the minor and the security of the public may require that the minor continue in custody or under supervision for a period extending beyond his minority." Ill. Rev. Stat. 1987, ch. 37, par. 805—4(3)(a).

The discretion of the trial court in evaluating an individual for transfer from the juvenile court system to the criminal court system does not mandate the trial judge to enunciate individual considerations of the statutory factors. Rather, the trial court must weigh and balance carefully *all* the statutory and nonstatutory factors presented. In *Clark* (*Clark*, 119 Ill. 2d at 12, 518 N.E.2d at 143), the court said, it is necessary "to balance the best interests of the alleged juvenile offender, particularly as these interests relate to his or her potential rehabilitation, against society's legitimate interest in being protected from criminal victimization perpetrated by minors." In *People v. Kraman* (1981), 96

Ill. App. 3d 390, 404, 421 N.E.2d 346, the court also commented that there is no precise formula for evaluating statutory and nonstatutory criteria in making the transfer determination. *People v. Green* (1980), 86 Ill. App. 3d 852, 856, 408 N.E.2d 479, specifically notes: "all of the relevant statutory factors need not be resolved against the defendant in order to justify the waiver of jurisdiction." The court in *Clark* (*Clark*, 119 Ill. 2d at 12, 518 N.E.2d at 143) said that a judicial decision based on such reasoning is a "product of sound judicial discretion which will not be disturbed on review."

The State has the burden to present adequate evidence at the transfer hearing to support the juvenile judge's decision to grant the motion to transfer. To sustain this burden, the State presented several witnesses as well as clinical and social investigation reports of Ollins. Chicago police detectives Capesius and Mercurio testified as to the initial crime scene investigation. The crime was described by the trial court judge as "heinous and serious." The detectives further testified to the events surrounding the statements of codefendant Marcellius Bradford on January 28, 1987. Dr. Joann Richmond, of the office of the medical examiner of Cook County, testified to the results of the autopsy that she had performed on the victim, Lori Roscetti. The results indicated that Ms. Roscetti had died as a result of multiple severe blunt trauma to her body. Robert Meyer, of the Department of Corrections, is a probation officer who testified as to the structure and function of the juvenile division of the Department. His testimony outlined for the court the possible course of incarceration within the juvenile system as well as the procedures of transfer and subsequent incarceration within the criminal courts system should the defendant be treated as an adult.

The defense for Ollins presented Ms. Jacqueline Wallace, a juvenile probation officer, who was responsible for compiling the social history investigation of the defendant. She interviewed the defendant's family, teachers, and school reports. At the transfer hearing, she stated that the defendant should not be transferred to the criminal courts or be incarcerated beyond his 21st birthday. She based this opinion on the fact that Ollins had made some academic progress during his placement at the Carpenter School. However, it is difficult, if not impossible, to equate this mitigating factor with the brutal and heinous nature of the crime the defendant committed.

■ In rendering his decision, the judge referred to the moral, emotional, and mental welfare of the minor. He then proceeded to outline his decision in light of the specific statutory factors listed in section 5—4(3)(a) of the Juvenile Court Act of 1987 (Ill. Rev. Stat.

1987, ch. 37, par. 805—4(3)(a)). First, he felt that a grand jury would return an indictment in the case; that evidence of culpability beyond minimal involvement had been established. Second, the court felt that the evidence presented established the crime to have been committed in an extremely aggressive and premeditated manner. Third, the age of the minor was 14 years and 4 months at the time of the incident. The court noted that this would place the defendant only eight months short of an automatic transfer. Further, the Juvenile Court Act states that below age 13 an individual cannot be committed except in rare circumstances; at age 17 an individual is deemed an adult. Therefore, Ollins fell in the middle range of the two ends of incarceration scale. Fourth, Calvin Ollins had no prior history of delinquency. The court noted this was an extremely mitigating factor in reaching the decision to transfer or not. Fifth, the statute mandates that consideration be given to the type of facilities available for the treatment and rehabilitation of the minor. The court held that nothing would be foreclosed from the defendant as a consequence of a transfer decision. Finally, the court reiterated its primary goal: balancing the best interests of the minor against the security of the public.

The court reasoned that in viewing the evidence presented, both statutory and nonstatutory, the defendant required incarceration beyond the age of minority. The court stated that the facilities necessary to meet the needs of the defendant during his incarceration were available. The court emphatically stated: "[T]he court has considered all six elements of the act, and I want the record to reveal that I have considered them."

The Illinois Supreme Court has said: "According to our interpretation of the Illinois transfer statute, the role of the appellate court is to determine whether, in evaluating the evidence in light of the statutory criteria, the juvenile judge has abused his discretion." *People v. Taylor* (1979), 76 Ill. 2d 289, 300-01, 391 N.E.2d 366, citing *People v. Underwood* (1977), 50 Ill. App. 3d 908.

In light of the careful consideration of both statutory and nonstatutory factors in reaching the decision to transfer the defendant to the criminal courts, we find no abuse of discretion by the trial court.

The defendant additionally argues that the juvenile judge committed error in transferring the defendant to the criminal courts because he did not consider the potential sentence of life imprisonment without parole. The defense relies on *Clark* (*Clark*, 119 Ill. 2d 1, 518 N.E.2d 138) to support this argument. *Clark*, however, is

distinguishable from the situation of Ollins. In *Clark*, the court had only two equally extreme alternatives in deciding whether or not to transfer the juvenile to the criminal court system to be tried as an adult. Because of the nature of the defendant's alleged crime (a juvenile was charged in the juvenile petition with the murders of two victims during the robbery of their home), the court deciding the transfer would also become the sentencing court. The transferring court was faced with the choice of either allowing the juvenile to be incarcerated only to the age of 21 under the juvenile jurisdiction or, if transferred to the criminal courts, to be tried as an adult, and the juvenile would receive a sentence of mandatory life imprisonment. Further, the court in *Clark* did not receive any information in compliance with the statutory dictates of the Juvenile Court Act, section 5—4(3)(a) in making the transfer decision. The court in Ollins' case heard and evaluated extensive testimony before making the transfer decision.

■ We find the defendant's claim that the transfer court did not consider the possibility of a mandatory life imprisonment sentence rises to the level of simple conjecture. The State cites *People v. Gutierrez* (1982), 105 Ill. App. 3d 1059, 433 N.E.2d 361, in support of a basic tenet of jurisprudence: the court is presumed to know the law. The defendant has not demonstrated ignorance of this tenet by the trial court. Therefore, no abuse of discretion in transferring Ollins to the criminal court system has occurred.

The second issue the defendant raises is that the trial court erred in denying Ollins' motion to quash his warrantless arrest and suppress the evidence. The defendant alleges that no probable cause, exigent circumstances, or consent issued incident to the warrantless arrest. The State asserts that not only did probable cause exist for the warrantless arrest of Ollins, but that exigent circumstances were present. The State further maintained that the police officers were given consent to search the apartment by a person with authority on the premises.

The defendant constructs his argument on a constitutional foundation of case precedent. The ruling in *Mapp v. Ohio* (1961), 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684, refers to the content of the fourth amendment to the United States Constitution, made applicable to the States by the fourteenth amendment to the Constitution of the United States. The fourth amendment outlines the security afforded to citizens to be free from unreasonable searches and seizures to their persons, houses, papers, and effects. The defendant cites *Payton v. New York* (1980), 445 U.S. 573, 589-90, 63 L.

Ed. 2d 639, 653, 100 S. Ct. 1371, 1382, to reinforce his argument. *Payton* enunciates a basic principle of constitutional fourth amendment law: "At the very [core of the fourth amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." (445 U.S. at 589-90, 63 L. Ed. 2d at 653, 100 S. Ct. at 1382.) Ollins was arrested at home, without a warrant. Therefore, the defense argues, the arrest of Ollins was presumptively unreasonable because his fourth amendment rights were violated.

■ However, the defendant's argument is deficient because it fails to consider that there are two judicially created exceptions to the fourth amendment's prohibition against a warrantless arrest of a person in his own home. Those exceptions combine probable cause to arrest with either exigent circumstances incident to the arrest, or consent to enter the abode. *People v. Abney* (1980), 81 Ill. 2d 159, 407 N.E.2d 543; *People v. Stamps* (1982), 108 Ill. App. 3d 280, 438 N.E.2d 1282.

The "totality of the facts and circumstances," as known to the arresting officer at the time of the arrest, is the test of whether or not probable cause was present to justify the belief of a reasonable man that an offense has been committed and that the person arrested has committed that offense. (*People v. Tisler* (1984), 103 Ill. 2d 226, 469 N.E.2d 147; *People v. Rimmer* (1985), 132 Ill. App. 3d 107, 113, 476 N.E.2d 1278.) The State argues that the dimensions of probable cause are not governed by precise technicalities, but rather by the commonsense decisions made upon viewing the totality of facts and circumstances presented to the arresting officers. (*Tisler*, 103 Ill. 2d at 236, 469 N.E.2d at 152.) The Court in *Illinois v. Gates* (1983), 462 U.S. 213, 231, 76 L. Ed. 2d 527, 544, 103 S. Ct. 2317, 2328, comments that the core concept of a "practical, nontechnical conception" is the basic premise in decisions assessing probable cause.

The State, with acknowledgment of the aforementioned constitutional principles, bases a finding of probable cause to arrest the defendant upon the statement of codefendant Marcellius Bradford. Prior to the statement of Bradford, Ollins had not been implicated in the attack on Lori Roscetti.

*People v. James* (1987), 118 Ill. 2d 214, 514 N.E.2d 998, established that the statement of an accomplice to a crime, implicating another, made while in police custody, may establish probable cause for the arrest of the individual so implicated if a determination of reliability can be established. The test of such reliability is an evalu-

ation of the totality of the facts and circumstances known to the police at the time of the arrest. *James*, 118 Ill. 2d 214, 514 N.E.2d 998.

Three specific factors were established in *James* (118 Ill. 2d 214, 514 N.E.2d 998): (1) whether the accomplice's statement made while in custody contains statements against penal interests; (2) whether there are promises of leniency or other inducements to make the statement; and (3) whether there is independent verification of substantial parts of the statement. *People v. Carpenter* (1981), 95 Ill. App. 3d 722, 725, 420 N.E.2d 640, held not even a "controversy [can exist] when a participant in a crime identifies his accomplices, and the informer's identity is disclosed." This is precisely what occurred when Bradford gave his in-custody statement to the police regarding Ollins.

Bradford admitted his involvement in the attack on Lori Roscetti. Bradford acknowledged in his written statement to the police that no promises, threats, or inducements of any kind were made in connection with his statement. Detective Mercurio testified at the hearing to determine probable cause as to the high degree of correlation between the statement of Bradford and facts already known to the police through independent investigation. These facts place Bradford's statement within the four corners of the criteria set forth in *James* (118 Ill. 2d 214, 514 N.E.2d 998).

The decision of the trial court must rise to the level of being manifestly erroneous before the court of review will disturb the decision of the lower court. (*People v. Bell* (1981), 96 Ill. App. 3d 857, 869, 421 N.E.2d 1351.) We find the decision of the trial court cannot be said to be against the manifest weight of the evidence.

The defendant next argues that no exigent circumstances were present incident to the arrest of Ollins. Even assuming probable cause did exist, the defense argues, it could not have existed until Bradford's statement implicating Ollins at approximately 11 p.m. Since Ollins was not arrested until 2 a.m., there was still a window of time in which the police could have gotten a warrant or attempted to have a warrant issued.

The determination of whether exigent circumstances existed or not should be guided by the "reasonableness of the officers' " actions in light of the facts known to them at the time they acted. (*People v. Hoddenbach* (1988), 169 Ill. App. 3d 499, 525 N.E.2d 888.) The court in *People v. Abney* (1980), 81 Ill. 2d 159, 407 N.E.2d 543, defines the following factors in determining whether or not a nonconsensual entry into a home was justifiable under the cir-

cumstances: (1) the need for prompt police action in view of the immediacy of the crime; (2) the lack of deliberate or unjustifiable delay during which a warrant could have been obtained; (3) a reasonable belief that the suspect was armed; (4) the presence of a grave offense, especially a crime of violence; (5) a clear showing of probable cause based on reasonable trustworthy information; (6) a clear identification of the defendant as the offender; (7) a strong belief that the defendant was on the premises entered; (8) a peaceable entry by the police; and (9) the likelihood that the suspect will escape if not swiftly apprehended. Each and every one of the above enumerated factors need not be present in order to justify a finding of exigent circumstances. The defendant has the burden of proving that an overall consideration of the factors would be indicative of unreasonable police action. *People v. Sakalas* (1980), 85 Ill. App. 3d 59, 405 N.E.2d 1121.

It is undisputed that Lori Roscetti was the victim of a heinous, senseless, and brutal attack. The police had been conducting an intensive investigation for approximately three months. Bradford had only been in custody since 9 a.m. on the day in which he made a statement implicating Ollins in the murder. However, the defendant's argument that probable cause, if it existed at all, existed only after Bradford made his in-custody statement implicating Ollins at 11 p.m. is diffused by the holding in *People v. Johnson* (1984), 121 Ill. App. 3d 358, 459 N.E.2d 1000. In *Johnson*, the court held that the defendant may have had an incentive to flee since the police had arrested his accomplice three hours earlier. The possibility existed that the defendant, upon learning of his accomplice being apprehended, might flee. The police did not know whether or not Ollins was aware that Bradford was in custody. The police did not know whether or not Ollins would flee if he had this knowledge. The police did not know whether or not Ollins was armed and dangerous. If Ollins did find out that Bradford was in custody, the possibility existed that evidence could be destroyed.

Because the State has met the criteria of several of the factors established in *Abney* (81 Ill. 2d 159, 407 N.E.2d 543), we find that the defendant has failed to establish that the decision of the lower court was manifestly erroneous.

As to the issue of consent, the defendant argues that (1) there was no consent or (2) if consent was given, it was given by a person without the authority to do so. Thomas Smith signed the consent form for the arresting officers. Smith was in the apartment with the approval of the defendant's mother, Phyllis Ollins. Mrs. Ol-

lins had left the apartment to go to a community center. Before she left, her instructions to Smith were to watch over her son, Calvin Ollins. Therefore, Mrs. Ollins gave Smith specific, delegated authority and control over her apartment in her absence.

■ The defendant has the burden of establishing that the entry by the police onto the premises was accomplished without consent. (*Sakalas*, 85 Ill. App. 3d at 65.) Consent may be given by one who controls the premises, not necessarily the arrestee. (*People v. Walker* (1988), 177 Ill. App. 3d 743, 745, 532 N.E.2d 447.) Consent need not be given by the arrestee; it may be obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected. (*United States v. Matlock* (1974), 415 U.S. 164, 39 L. Ed. 2d 242, 94 S. Ct. 988.) Determination of the existence of consent is a factual matter to be determined by the trial court; if the issue is in conflict, the finding of the trial court will prevail unless clearly unreasonable. (*People v. Taylor* (1975), 31 Ill. App. 3d 576, 578, 333 N.E.2d 41.) Smith permitted the police officers to enter the apartment. Smith made no attempt to prevent the police officers from entering the apartment. In fact, Smith directed the officers to the room in which Calvin Ollins was sleeping. There can be no finding of a nonconsensual entry to the Ollins apartment in light of the facts.

The final issue the defendant raises on appeal is that the trial court erred when it denied Ollins' motion to suppress statements. The State's position is that the statements made by Ollins were so made with full awareness and understanding of his rights.

The test for determining the voluntariness of a statement is the "totality of the circumstances" surrounding the statement. If the evaluation of the circumstances requires the resolution of conflicts in the evidence or findings on the credibility of witnesses, the trial court has "the duty *** to resolve conflicts in evidence and determine the credibility of witnesses." (*People v. Clements* (1985), 135 Ill. App. 3d 1001, 1008, 482 N.E.2d 675.) The findings of the trial court "will not be disturbed unless it is contrary to the manifest weight of the evidence." *People v. Mays* (1988), 176 Ill. App. 3d 1027, 1033, 532 N.E.2d 843.

The evidence at the hearing for the defendant's motion to suppress established that the defendant was given his rights on five separate occasions on January 28, 1987. The defendant was repeatedly asked by Sussman if he understood his rights. The defendant replied that he did understand what was being said to him.

The linchpin of the defendant's argument is that because his intelligence was assessed as being in the educable mentally handicapped range, he was incapable of fully understanding his rights. However, at the suppression hearing, Dr. Bussell, the director of the clinical services for the juvenile court, testified to the contrary. The trial judge concurred.

In *People v. Racanelli* (1985), 132 Ill. App. 3d 124, 132, 476 N.E.2d 1179, the court held that the inquiry of the trial court should be based on the "characteristics of the accused and the details of the interrogation." In *People v. Henderson* (1988), 175 Ill. App. 3d 483, 489, 529 N.E.2d 372, this court said: "evidence of limited intellectual capacity alone does not indicate that a defendant is incapable of waiving his constitutional rights and making a voluntary confession."

■ Dr. Bussell, a psychiatrist, opined that after a careful review of evaluative reports from different agencies and a personal interview with the defendant, he felt that the defendant would be able to understand the words and phrases used to inform him of his rights. The trial judge addressed the demeanor of the defendant during the course of his testimony. The trial judge expressed surprise that in view of the concern for the defendant's alleged mental deficiencies, the defendant testified "as well as any 14 year old could be expected to testify." The defendant recalled with accuracy the details of his arrest, his written statement, and the subsequent correction he made to his statement.

Thus, the trial court evaluated the defendant's statement by considering the totality of the circumstances including the mental capacity, chronological age, and emotional complexion of the defendant. Therefore, we find no abuse of discretion by the lower court on this issue.

We find an overview of the evidence reveals that the trial court properly considered the constitutional rights of the defendant relative to the police action taken in his arrest and subsequent investigation.

Affirmed.

GREIMAN, P.J., and CERDA, J., concur.