THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DANIEL J. STEPHENS, Defendant-Appellant.

Fourth District   No. 4—00—0874

Argued May 16, 2001.—Opinion filed July 6, 2001.

Andrew C. Schnack III (argued), of Schnack Law Offices, of Quincy, for appellant.

Barney S. Bier, State's Attorney, of Quincy (Norbert J. Goetten, Robert J. Biderman, and Denise M. Ambrose (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

In June 2000, a jury convicted defendant, Daniel J. Stephens, of second degree murder (720 ILCS 5/9—2(a)(2) (West 1998)). In October 2000, the trial court granted the State's motion to sentence defendant as an adult and sentenced him to 12 years' imprisonment. Defendant appeals, arguing the trial court abused its discretion in sentencing him as an adult. We affirm.

## I. BACKGROUND

The evidence at defendant's trial showed the following. In February 2000, defendant, age 16, and Damian Vogel, age 16, attended an underage drinking party at the home of Brian Morgan, age 16, in rural Liberty, Illinois. Morgan's father had purchased a keg of beer for the teens, and Morgan estimated 45 to 60 people attended the party. During the day, defendant and Ron Willingham had delivered logs to the residence for a bonfire to be held during the party.

Defendant and Vogel were both students at Quincy Senior High School and were acquaintances. At about 9:30 p.m., while at the party, Vogel invited defendant, Nick Niewohner, and Jeff Orebaugh to look at his new car. The group sat inside the car and decided to smoke marijuana from a "bowl" belonging to defendant. Defendant, Vogel, and Orebaugh had been drinking before they started smoking marijuana. After each had taken a number of "hits" from the bowl, defendant vomited in Vogel's car. The young men exited the car, and Vogel demanded defendant clean up the vomit from the car and threatened to "whoop his ass" if defendant did not clean up the vomit. Defendant, who was then sitting on the tailgate of a nearby truck, told Vogel to "chill out" and assured him he would clean it up in a minute. However, Vogel insisted defendant clean it up within two minutes or he would "kick defendant's ass." Chris Wright, age 19, overheard the argument and told Vogel and defendant to stop fighting.

Defendant walked toward the Morgan residence. Vogel followed him and encountered him on the other side of the house. Orebaugh and Niewohner followed Vogel to see what would happen.

Orebaugh testified he saw Vogel tackle defendant by hitting defendant's chest and wrapping his arms around defendant's back. Orebaugh was unsure if this actually knocked defendant down. Vogel

and defendant got up, and Vogel then punched defendant's face. Defendant then reached down and picked up a log, described as about 16 inches long and 5 inches in diameter, and struck Vogel twice in the side of the head with the log. Orebaugh stated Vogel then fell to the ground face first. He appeared to be unconscious because he did not move after he fell. Defendant then stood over Vogel's head and swung the log four to six more times to the back of Vogel's head, making definite contact at least three times. While defendant was swinging the log, he was yelling, "I told you not to hit me." Orebaugh stated there was a significant size disparity between defendant and Vogel. Orebaugh described Vogel as approximately 5 feet 11 inches tall and skinny, whereas defendant was approximately 6 feet 4 inches tall and weighed more than 230 pounds.

Niewohner testified similarly to Orebaugh and testified Vogel did not move when defendant hit him with the log four to seven times. Niewohner started to run toward defendant, but Chris Wright reached defendant before him and pulled defendant off Vogel.

Wright testified he had been at the party 10 to 15 minutes and was near the bonfire when he heard the sound of "two pieces of heavy wood knocking against each other." When Wright was able to discern where the noise was coming from, he began to run toward Vogel and defendant. As he ran toward them, he continued to hear the noise and saw defendant standing over Vogel. He was able then to tackle defendant off Vogel. Defendant still had the log in his hand, and Wright asked defendant why he had hit Vogel with the log. Defendant replied, "He hit me Chris. What do you expect me to do?" Defendant raised the log at Wright, but Wright ordered him to drop it. Wright told defendant he had killed Vogel, but defendant insisted Vogel was still "okay." Wright checked for Vogel's pulse and noticed a large hole in the back of Vogel's head. Wright yelled for someone to call 911 and then drove away with his girlfriend.

Several other witnesses testified to hearing the sound of repeated "thumps" and to seeing a large individual standing over someone else. The larger figure was yelling crude comments at the individual on the ground and striking the person on the ground with something.

Morgan testified someone told him defendant had hit Vogel in the head, and he then ran to Vogel to see how badly he was hurt. When Morgan saw how badly Vogel was hurt, he told defendant to call an ambulance and to stay there to tell them what he had done. Morgan told everyone else to leave before the police arrived. Defendant then called 911 and said a few words before Morgan took the phone from defendant and gave directions to his home.

Defendant stated to the paramedic on the scene and the first of-

ficer on the scene he had struck Vogel in the head three times because Vogel had punched him. He stated Vogel had started it. Defendant pointed out the log he used.

Defendant testified he had walked away from Vogel after Vogel's first threats to "kick his ass." Defendant then walked to his vehicle to get some stuff to clean Vogel's car, and when he walked around the corner of the house, Vogel again threatened him. Defendant then pushed Vogel out of the way and walked passed Vogel. Defendant testified Vogel then struck him twice behind one of his ears. Defendant tried to walk away again, but Vogel tackled him and attempted to knock him down. Defendant caught his balance by placing his hand on the ground, where it happened to rest upon a log. Defendant stated he picked up the log and struck Vogel three times with the log while they where still standing. Defendant stated Vogel fell to the ground on the third blow. Defendant testified he did not remember standing over Vogel and striking him more after he fell or yelling at him as he struck him. Defendant testified he struck Vogel because he was scared of him.

In February 2000, the State charged defendant with first degree murder (720 ILCS 5/9—1(a)(1) (West Supp. 1999)). Where the juvenile accused of first degree murder is 15 or older, transfer to the adult court is automatic. 705 ILCS 405/5—130(1)(a) (West 1998). Thus, defendant was tried as an adult. In June 2000, a jury found defendant guilty of the lesser mitigated offense of second degree murder (720 ILCS 5/9—2(a)(2) (West 1998)). Defendant was then transferred back to juvenile court for purposes of sentencing. 705 ILCS 405/5—130(1)(c)(ii) (West Supp. 1999). The State filed a motion to have defendant sentenced as an adult pursuant to statute. 705 ILCS 405/5—130(1)(c)(ii) (West Supp. 1999). In August 2000, the trial court conducted a hearing upon the motion.

Michael Furrie, assistant superintendent of operations at the Illinois Youth Center, testified he has been with the Illinois Department of Corrections for more than 25 years with experience in both juvenile and adult facilities of incarceration. Furrie then explained to the court some of the differences and distinctions between the two systems. Furrie noted the main purpose of juvenile detention is rehabilitation, whereas the focus in adult facilities is the safety and protection of the public. School attendance is mandatory in juvenile facilities while merely voluntary in adult facilities.

Dr. Frank Froman, a clinical psychologist specializing in child psychology and behavior disorder, testified he administered a number of assessment tests to defendant. He also interviewed defendant's family and testified defendant had a good relationship with his father and stepmother. Froman measured defendant's intelligence quotient

at 88, placing him in the lower quarter of individuals. Froman described episodical use of alcohol and frequent use of marijuana by defendant. Froman believed the marijuana use would help counter defendant's hyperactive symptoms. Froman thought his diagnosis of defendant was typical of a youth his age. He testified defendant is more of a child than an adult in how he interacts with people, what he does for fun, and his thought process and understanding of himself. Froman stated defendant was a salvageable youth and could be rehabilitated, but he opined that, if placed in an adult facility, defendant's chances of coming out a healthy individual were much reduced. Froman testified he did not believe defendant was psychologically strong enough to deal with adult prisoners.

The trial court granted the State's motion to sentence defendant as an adult. In October 2000, the trial court sentenced defendant to 12 years in the Department of Corrections, adult division, with credit for two days' time served and imposed restitution and court costs.

Defendant appeals.

## II. ANALYSIS

●1 Defendant argues the trial court abused its discretion in sentencing him as an adult. Section 5—130(1)(c)(ii) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/5—130(1)(c)(ii) (West Supp. 1999)) provides as follows:

> "(ii) If after trial or plea the court finds that the minor committed an offense not covered by paragraph (a) of this subsection (1), that finding shall not invalidate the verdict or the prosecution of the minor under the criminal laws of the State; however, unless the State requests a hearing for the purpose of sentencing the minor under [c]hapter V of the Unified Code of Corrections [(730 ILCS 5/5—1—1 through 5—9—4 (West 1998 & Supp. 1999))], the [c]ourt must proceed under [s]ections 5—705 and 5—710 of this [a]rticle [(705 ILCS 405/5—705 (West 1998), 5—710 (West Supp. 1999))]. To request a hearing, the State must file a written motion within 10 days following the entry of a finding or the return of a verdict. Reasonable notice of the motion shall be given to the minor or his or her counsel. If the motion is made by the State, the court shall conduct a hearing to determine if the minor should be sentenced under [c]hapter V of the Unified Code of Corrections. In making its determination, the court shall consider among other matters: (a) whether there is evidence that the offense was committed in an aggressive and premeditated manner; (b) the age of the minor; (c) the previous history of the minor; (d) whether there are facilities particularly available to the Juvenile Court or the Department of Corrections, Juvenile Division, for the treatment and rehabilitation

of the minor; (e) whether the security of the public requires sentencing under [c]hapter V of the Unified Code of Corrections; and (f) whether the minor possessed a deadly weapon when committing the offense. The rules of evidence shall be the same as if at trial. If after the hearing the court finds that the minor should be sentenced under [c]hapter V of the Unified Code of Corrections, then the court shall sentence the minor accordingly having available to it any or all dispositions so prescribed."

Defendant argues the trial court abused its discretion because all six of the statutory factors to determine if he should be sentenced as an adult should have been resolved in his favor. Reviewing courts are limited to determining whether the circuit court's findings are against the manifest weight of the evidence or reflect an abuse of discretion. *People v. Underwood*, 50 Ill. App. 3d 908, 910, 365 N.E.2d 1370, 1372 (1977), *rev'd on other grounds*, 72 Ill. 2d 124, 378 N.E.2d 513 (1978).

Defendant contends the trial court should have weighed each statutory factor in his favor and thus the court abused its discretion in sentencing him as an adult. The trial court is bound to consider the specific criteria set forth in the Act. *People v. Ollins*, 231 Ill. App. 3d 243, 247, 606 N.E.2d 192, 196 (1992). As to the first factor, defendant argues he was not aggressive until Vogel attacked and provoked him. In considering the second factor, defendant points out he was 16 years old when he committed the crime, making him eligible to be sentenced as a juvenile. As to the third factor, defendant contends he had no previous criminal history. As to the fourth factor, defendant contends he will be out of place in adult prison and there are proper facilities for him with the juvenile department of corrections. With regard to the fifth factor, defendant contends the testimony of Dr. Froman shows he is not a danger to society and it is in the best interest of society to sentence him as a juvenile. As to the final factor, defendant contends he did not bring a weapon to this fight and instead merely happened to lay his hand upon the log. Based upon the six statutory factors, defendant argues the court must sentence him as a juvenile.

•2 While the court must consider all the factors, no one factor is determinative, nor must each factor be given equal weight. *People v. Luckett*, 295 Ill. App. 3d 342, 347, 692 N.E.2d 1345, 1348 (1998). As the court explained in *Luckett*, 295 Ill. App. 3d at 347-48, 692 N.E.2d at 1348:

"Moreover, not all of the statutory criteria must be resolved against the minor to justify treating him as an adult. See *People v. Sistrunk*, 259 Ill. App. 3d 40, 48, 630 N.E.2d 1213, 1219 (1994). Where the record shows that the trial court considered all the factors and its determination is not an abuse of discretion, then the ruling will

be affirmed on appeal. See [*People v.] Martin*, 285 Ill. App. 3d [623,] 631, 674 N.E.2d [90,] 95 [(1996)]."

•3 Here, the record shows the State properly moved to sentence the defendant as an adult. Thereafter, the trial court reviewed the evidence relating to the statutory factors. The court then made a careful examination of each of the factors in making the determination.

The trial court pointed out at the time of sentencing that defendant may have been 16 years old at the time of the offense, but he was very close to 17 years old and "the closer one is to 17, the more that suggests an adult punishment." As to the next factor, the court took note Vogel may have been the initial aggressor. However, the court then pointed out defendant administered several crushing blows to the back of Vogel's skull after Vogel was facedown upon the ground and "[i]n all likelihood unconscious but certainly offering no aggression or even defense." The court also explained how defendant yelled at Vogel in such crude language as he struck Vogel upon the ground. This showed defendant's aggression in "not just his actions, but also in his words and in his thoughts."

The trial court then noted the factor of prior history weighed in favor of defendant by all accounts, except defendant's underage use of alcohol and drugs. Concerning the fourth factor, the court explained its belief defendant would still be provided schooling and other needed services in an adult facility, although possibly at a different pace. As to the sixth factor, the court found "[a] log in this case clearly was a deadly weapon." It was of no difference defendant only happened upon his weapon. Finally, the court made a detailed examination of the fifth factor and took note of the seriousness of the offense, the lack of explanation as to why this fight ended so tragically, and the need to protect society. The six factors enumerated in the statute are to be considered by the juvenile court "among other matters" indicating the legislature's intent the trial court's inquiry is not limited to these six factors. *In re Burns*, 67 Ill. App. 3d 361, 369, 385 N.E.2d 22, 28 (1978).

From our review of the record on appeal, we conclude the trial court properly considered the statutory factors contained in the Act. The court explained in some detail its findings on each of the factors. Although all of the factors may not cut against defendant, this is not necessary for sentencing as an adult. The trial court properly considered all of the statutory factors. We further conclude the trial court did not abuse its discretion when it determined defendant should be sentenced as an adult.

## III. CONCLUSION

Accordingly, we affirm the judgment of the trial court.

Affirmed.

STEIGMANN, P.J., and McCULLOUGH, J., concur.